UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOYCE CHRISTIE, Individually, and on
Behalf of the Estate and Next of Kin of
Nicholas T. Christie, Deceased

      Plaintiff

    vs.                          CASE NO. 2:10-CV-420-FtM-36-DNF

MIKE SCOTT, Individually and in his     JUDGE CHARLENE E. HONEYWELL
Official Capacity as Sheriff of Lee County,
Florida, PRISON HEALTH                MAGISTRATE JUDGE DOUGLAS N. FRAZIER
SERVICES, INC., a Tennessee
Corporation, DEPUTY DANIEL
FALZONE, DEPUTY MONSHAY
GIBBS, DEPUTY KURTIS
CALHOUN, DEPUTY FRANK J.
HANSEN, DEPUTY DATHAN S.
PYLE, DEPUTY JEREMY HARDIN,
DEPUTY TIMOTHY H. ELDRIDGE,
DEPUTY ANDRE DIMARCO,
SERGEANT ARMANDO CROKER,
SERGEANT MARY DAROSS,
SERGEANT ROBERT BRAMBLET,
LIEUTENANT MICHAEL PEAK,
MARIA CANETE, R.N., LINDA
SUNDO, L.P.N., NATALIA
SAUNDERS, R.N., JOAN WINNIE,
R.N., GERALDINE JONES, R.N.,
JANICE STEPNOSKI, L.C.S.W.,
KAREN OVERBEE, CHRISTINE
ATEN, TAMMY HAMILTON, R.N.,
and KATHRYN T. HOLLIER, C.N.A.

      Defendants

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS PRISON HEALTH SERVICES, INC., MARIA CANETE, R.N., LINDA SUNDO, L.P.N., NATALIA SAUNDERS, R.N., JOAN WINNIE, R.N., GERALDINE JONES, R.N., JANICE STEPNOSKI, L.C.S.W., KAREN OVERBEE, CHRISTINE ATEN, TAMMY HAMILTON, R.N., AND KATHRYN T. HOLLIER, C.N.A.'S MOTION TO DISMISS**

Plaintiff, Joyce Christie, by and through counsel, and pursuant to Local Rule 3.01(b), submits this Memorandum in Opposition to Defendants Prison Health Services, Inc. ("PHS"), Maria Canete, R.N., Linda Sundo, L.P.N., Natalia Saunders, R.N., Joan Winnie, R.N., Geraldine Jones, R.N., Janice Stepnoski, L.C.S.W., Karen Overbee, Christine Aten, Tammy Hamilton, R.N., and Kathryn T. Hollier, C.N.A.'s (collectively, the "Medical Defendants") Motion to Dismiss (Documents No. 72 and No. 73).

I.  INTRODUCTION

This case stems from the homicide death of Joyce Christie's late husband, Nick Christie, a pre-trial detainee at the Lee County Jail, who was killed after being doused with multiple oleoresin capsicum ("O.C.") spray and fogger applications and hours of restraint, strapped naked to a chair with a hood over his head. While housed as a pre-trial detainee on a misdemeanor charge of trespassing, Nick Christie was sprayed and/or fogged with O.C. no less than ten times from March 27-29, 2009 while he was confined to a cell at the Lee County Jail, including while he was handcuffed, while he was strapped naked to a restraint chair, and while he had a hood over his face while strapped naked to a restraint chair. (Third Amended Complaint, ¶¶ 57, 58, 60, 62, 64, 67, 69, 72, 74). All the while, Nick Christie was deprived of the medical and mental health care he desperately needed.

Nick Christie was detained at the Lee County Jail from on or about March 25-26, 2009, and March 27-29, 2009. (*Id.* at ¶ 35). During his first period of detention (March 25-

1

26, 2009), Mr. Christie disclosed to and placed the Medical Defendants on notice of serious medical conditions with which he was afflicted, including, but not limited to, Chronic Obstructive Pulmonary Disease ("COPD"), a "heart condition," cardiovascular disease, atrial fibrillation, obesity, Gout, back pain, constipation, and umbilical hernia, all of which was recorded and documented in his medical chart/record. (*Id.* at ¶ 36). During both periods of detention, Plaintiff Joyce Christie, directly and indirectly, and Nick Christie, repeatedly informed the Medical Defendants that Mr. Christie was acutely and chronically mentally and physically ill and unstable and required immediate hospitalization and medical and psychiatric evaluation, assessment, intervention, referral, and care; that he had a heart condition; and that Mrs. Christie was concerned her husband did not have access to and had not been taking his prescriptions. (*Id.* at ¶ 42). During his first period of detention, Mr. Christie also disclosed to and placed the Medical Defendants on notice of the following prescription medications he was required to take: Albuterol®, Allopurinol®, Vicodin®, and Digoxin® for his "heart condition," all of which was recorded and documented in Mr. Christie's Lee County Jail record/chart. (*Id.* at ¶ 37). During both periods of detention Mr. Christie carried with him, and Defendants took custody of, a list of each prescription medication he took, including the dosage and frequency with which he took each medication, and the name of the prescribing physician for each drug. The list included: Digoxin®, Vicodin®, Lasix®, Paratonox®, Lexapro®, Clonozapam®, Potassium, Coumadin®, Allopurinol®, and Albuterol®/Nebulizer inhaler. (*Id.* at ¶ 43). Finally, during his first period of detention, it was recorded in Mr. Christie's medical record that he last took his prescription medications two days prior to being detained.

The Medical Defendants were, at all times relevant, responsible for providing Nick Christie with timely and adequate medical and mental health care, treatment, assessment, intervention, referral, medication and attention to prevent substantial physical and mental health deterioration and death.  Despite their knowledge of Mr. Christie's medical conditions and prescribed medications, during the intake process of his second period of detention at the Lee County Jail (March 27-29, 2009) on a misdemeanor trespass charge, the Medical Defendants performed and/or ordered no medical or mental health screening, assessment, evaluation, or referral, and did not review their own medical records and information created during his first period of detention, and in Defendants' possession.  The Medical Defendants also took no steps to ensure that Nick Christie was given the numerous prescription medications that he desperately needed.  The failure of the Medical Defendants to take any steps to provide Mr. Christie with obviously needed medical and mental health care showed deliberate indifference to and callous and/or reckless disregard for the rights and critical medical and mental health needs of Nick Christie, an individual suffering from obvious and known acute medical and mental health conditions/episodes that required appropriate care, treatment, assessment, intervention, referral, medication, and attention to prevent substantial physical and mental health deterioration and death.  The deprivation of Nick Christie's right to necessary medical and mental health care and treatment was then compounded by the use of excessive force when he was repeatedly sprayed and fogged with O.C., and permitted to remain in an area that exposed him to continuous high concentrations of O.C. when the use of O.C. on Nick Christie was medically contraindicated.

The Medical Defendants medically cleared Nick Christie, based solely on a visual evaluation, after each application of O.C. and took no steps to intervene or prevent additional applications of O.C. to Nick Christie, despite having knowledge that the application of O.C. was medically contraindicated given Nick's medical condition, including, but not limited to, COPD, a heart condition, obesity, and an acute psychotic episode.  This conduct, which constituted the use of excessive force, occurred with knowledge of and utter disregard for Nick Christie's serious medical and mental health conditions, in a manner that shocks the conscience and offends traditional notions of decency, and which reflects a willful, wanton, malicious and deliberate indifference and callous disregard for Nick Christie's constitutional rights, and which caused his wrongful death.  These acts were in addition to the deliberate indifference to Nick Christie's serious medical and mental health needs shown by the Medical Defendants and their medical negligence in their treatment or lack of treatment of Nick Christie.

## II.     SUMMARY OF ARGUMENT

Defendants move for the dismissal of Plaintiff's "individual capacity claims." Relying on Florida's Wrongful Death Statute, the Medical Defendants argue, erroneously, that federal courts apply state wrongful death statutes to § 1983 death cases.  The cases cited by the Medical Defendants, however, hold otherwise.  Plaintiff has properly asserted and preserved good faith individual capacity claims that are not subject to dismissal at this early juncture.

Defendants move for the dismissal of Count 1 on the basis that it is redundant. Counts 1 and 2 of Plaintiff's Complaint are easily distinguishable, and are not redundant, as

Count 1 is for the use of excessive force in violation of the Fourteenth Amendment and Count 2 is for deliberate indifference to serious medical and mental health needs in violation of the Fourteenth Amendment.  Defendants are correct that Count 1 alleges that the Medical Defendants provided or failed to provide medical care to Nick Christie, but Defendants fail to understand that Plaintiff also alleges in Count 1 that the medical care provided under the circumstances and the other acts of the Medical Defendants constituted the use of excessive force.  In Count 2, Plaintiff separately alleges a discrete cause of action for deliberate indifference to Nick Christie's serious medical and mental health needs.  That the Claims for Relief share overlapping facts or damages is irrelevant, the claims are not redundant, and Count 1 should not be dismissed against the Medical Defendants.

Defendants also move for the dismissal of Counts 6 and 11 on the basis that they are redundant, and argue that only Count 7 for medical negligence should survive.  These three claims, for ordinary negligence, medical negligence, and negligent hiring, retention, and supervision are separate and distinct and should not be dismissed.

Defendants move for the dismissal of Count 8 on the basis that Plaintiff does not allege sufficient facts to state a claim for relief for assault and battery against Defendant PHS.  Pursuant to the applicable pleading standards, Plaintiff alleges sufficient facts to state a claim for relief against Defendant PHS for assault and battery on the basis of vicarious liability.

Defendants do not move for the dismissal of Counts 2, 3, 4, 5, or 7, which are alleged against Defendant PHS and/or individual Medical Defendants.

### III. LAW AND ARGUMENT

#### A. Federal Civil Rules 8(a) and 12(b)(6).

Federal Civil Rule 8(a)(2) requires only "a short and plain statement of the claim showing the pleader is entitled to relief." A complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010), *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957).

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, which is what Defendants' Motion appears to be, courts must accept the allegations set forth in the complaint as true and construe them in the light most favorable to the plaintiff. *American Dental Ass'n v. CIGNA Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010), *quoting Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008). Furthermore, a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . " *American Dental Ass'n*, 511 F.3d at 1289, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) ("we do not require heightened fact pleading of specifics"). Rather, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*, 550 U.S. at 570. The *Twombly* Court cautioned, however, that its "plausibility standard" does not equate to a "probability requirement." Rather, a complaint need only provide enough factual allegations to "raise a reasonable expectation that discovery will reveal evidence" of the claims asserted. *Twombly*, 550 U.S. at 556.

In *Randall*, the Eleventh Circuit stated that "whatever requirements our heightened pleading standard once imposed [in civil rights actions] have since been replaced by those of

the *Twombly-Iqbal* plausibility standard." 610 F.3d at 708, n. 2. Those cases that reaffirmed a heightened pleading standard for § 1983 cases were effectively overturned by *Iqbal*. *Id.* at 709 (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)). Accordingly, the pleading threshold for § 1983 cases in the Eleventh Circuit is lower now than before *Twombly-Iqbal*. (*Twombly-Iqbal* did not announce a heightened pleading standard beyond Rule 8's requirements. *Twombly*, 550 U.S. at 750.). A district court should assume that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief, but no heightened pleading standard is to be applied in § 1983 cases. *Randall*, 610 F.3d at 710.

Plaintiff's Third Amended Complaint is sufficiently fact specific and meets Rule 8's pleading standard as set forth in *Twombly-Iqbal*. In addition, Plaintiff's claims are not redundant and each separate claim is properly pled.

**B.  Plaintiff Sufficiently Alleges and Preserves Individual Capacity Claims Supported by Good Faith Interpretations and Arguments Under the Law.**

Claiming "federal courts apply state wrongful death statutes in determining the appropriate parties and measure of damages" in § 1983 death cases, the Medical Defendants argue Plaintiff cannot assert individual capacity claims because Florida's Wrongful Death Statute does not recognize them. (Doc. No. 72, at 3). Federal courts do not, however, always apply state wrongful death statutes in § 1983 death cases. Rather, they conduct the necessary analysis under 42 U.S.C. § 1988, an analysis which the Medical Defendants completely ignore.

7

Contrary to the Medical Defendants' statement, the measure of damages in § 1983 death cases is not determined by state wrongful death statutes. In fact, one of the cases cited by the medical Defendants for this erroneous statement, *Heath v. City of Hialeah*, 560 F.Supp. 840 (S.D. Fla. 1983), actually holds the opposite (***federal common law of survivorship, not Florida Wrongful Death Act, governs damages recoverable in § 1983 civil rights suit arising out of death of individual at hands of police officer***). *See also Gilmere v. City of Atlanta, Georgia, R.C.*, 864 F.2d 734 (11th Cir. 1989) (state wrongful death statute inapplicable in determining proper amount of damages for § 1983 claim); *McFadden v. Sanchez*, 710 F.2d 907, 911 (2d Cir. 1983) ("we have no doubt that limitations [precluding punitive damages] in a state survival statute have no application to a § 1983 suit brought to redress a denial of rights that caused the decedent's death").

When considering whether or not to incorporate state law into federal § 1983 actions, courts must perform a three-tiered analysis set forth in 42 U.S.C. § 1988:

> First it must be decided whether the federal civil rights framework is deficient in furnishing the appropriate rule. If that question is answered affirmatively, the courts must then look to pertinent state law to fill the vacuum. Finally, the state law must be disregarded in favor of the federal common law if the state law is inconsistent with the meaning and purpose of the law.

*Heath*, 560 F.Supp. at 841; *see also Robertson v. Wegmann*, 436 U.S. 584, 587-90 (1978). The Medical Defendants perform no analysis pursuant to, much less even acknowledge, § 1988's controlling three-step inquiry. Accordingly, they have not met their burden under Rule 12(b)(6) and their Motion to Dismiss must be denied.

The Medical Defendants' reliance on *Brazier v. Cherry*, 293 F.2d 401 (5th Cir. 1961), for the unqualified proclamation that federal courts incorporate state law into § 1983 death

8

actions, is also misplaced. The *Brazier* court did incorporate Georgia's Wrongful Death and Survivorship Statutes in a § 1983 case, but only because it first concluded, pursuant to § 1988's framework, that those statutes effectively "provide[d] full remedies for the violations of the decedent's constitutional rights under § 1983" and were consistent with the meaning and purpose of § 1983. *See Carringer v. Rodgers*, 331 F.3d 844, 848-50 (11th Cir. 2003), examining *Brazier*. *Brazier* says nothing about Florida's Wrongful Death Statute, and the *Brazier* court performed no § 1988 analysis of Florida's Wrongful Death Act under the circumstances present in this case.

There are good grounds to assert and preserve Plaintiff's individual capacity claims. Section 1983 provides a remedy for constitutional deprivations to the "party injured." The homicide death of her husband injured Joyce Christie. The Medical Defendants have not disputed that she is an "injured party." Joyce Christie herself is entitled to individual relief under § 1983. A "party injured" under § 1983 has not yet been reviewed by the Supreme Court, but Joyce Christie's right to recover individually is consistent with the intent and legislative history of § 1983. *See Wrongful Death Actions and § 1983*, Steven H. Steinglass, 60 Ind. L.J. 559 (Fall, 1985).

The Medical Defendants have cited no authority and performed no analysis requiring the Court, particularly at this early stage of the litigation, to incorporate Florida's Wrongful Death Statute to prohibit Plaintiff's individual capacity claims. Furthermore, Florida's Wrongful Death Statute has been previously "disregarded in favor of federal common law," at least in determining recoverable damages in § 1983 death cases. *See supra*.

9

Plaintiff Joyce Christie satisfies the "irreducible minimum" of constitutional standing, which the Medical Defendants do not dispute. (*See* Doc. No. 72, at 4). Suffering the homicide death of her husband is certainly an injury in fact which is "actual, concrete, and particularized." By particularized, the Supreme Court has explained that it meant "the injury must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1. The loss of her husband under these circumstances undeniably affected Joyce Christie in "a personal and individual way." The conduct of the Defendants, as alleged in the Complaint, was the direct and proximate cause of the death of Nick Christie. Finally, there is a likelihood that the injury can be redressed by a favorable decision, which is why this lawsuit was filed. Joyce Christie has requested damages and injunctive relief that would redress the specific injury suffered.

The Medical Defendants have failed to meet their burden under Civil Rule 12(b)(6) for dismissal of Plaintiff's individual capacity claims, and their Motion should be denied.

    **C.**    **The First Claim for Relief States a Claim Against Defendants Canete, Sundo, Saunders, and Winnie for Violation of 42 U.S.C. § 1983 Upon Which Relief Can be Granted for the Use of Excessive and Outrageous Force.**

Defendants argue that Count 1 should be dismissed as to the Medical Defendants because "the claim is in excessive force and is primarily aimed at the Co-defendants." (Doc. No. 72, at 5). 42 U.S.C. § 1983 authorizes suits for violation of one's constitutional rights by a state actor. Thus, if a PHS employee, acting under color of law, uses, authorizes, or fails to prevent when under a duty to do so and/or participates in the use of excessive force upon a pre-trial detainee in violation of his Fourteenth Amendment rights, he or she may be liable. *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 701, 703 (11th Cir. 1985) ("[t]he

medical defendants do not contest, and there can be no serious dispute, that if their actions resulted in a deprivation of Ancata's constitutional rights, they would be subject to liability pursuant to 42 U.S.C. § 1983); *see also Prison Health Services, Inc. v. Lakeland Ledger Publishing Co.*, 718 So.2d 204 (Fla. 2d Dist. Ct. App. 1998) (PHS undertook to act on behalf of sheriff by providing medical services at jail); *Nelson v. Prison Health Services, Inc.*, 991 F.Supp. 1452, 1463 (M.D. Fla. 1997) (nurses employed by private company that provided medical services for county jail were state actors subject to liability under § 1983).

Plaintiff alleges sufficient facts to state a § 1983 claim against Defendants Canete, Sundo, Saunders, and Winnie. Specifically, the Complaint alleges that these Defendants authorized, participated in and/or failed to intervene/prevent the use(s) of excessive and outrageous force on Nick Christie. Additionally, Plaintiff alleges the uses and excessive uses of force authorized and/or not prevented from use by the Medical Defendants named in the First Claim and/or in which these Defendants participated, were medically contraindicated and should never have been used, and were excessive in part *because* of Nick Christie's medical and mental health conditions. This is separate and distinct from Plaintiff's claim that the Medical Defendants were deliberately indifferent to Nick Christie's serious medical and mental health needs, and failed to provide proper screening, care and treatment to Nick Christie in violation of his Fourteenth Amendment rights.

Plaintiff's First Claim for Relief states a cause of action under § 1983 upon which relief can be granted, is not redundant, and should not be dismissed against the Medical Defendants.

11

### D. Plaintiff's Sixth, Seventh, and Eleventh Claims for Relief State Separate and Distinct Claims Upon Which Relief Can be Granted for Negligence, Medical Negligence, and Negligent Hiring.

The Medical Defendants seek dismissal of the Sixth and Eleventh Claims for Relief, arguing they are all claims for medical malpractice under Florida law, and thus, duplicative of the Seventh Claim for Relief. The Sixth, Seventh, and Eleventh Claims, however, assert discrete causes of action and are not subject to dismissal.

In her Sixth Claim for Relief, Plaintiff sues the Medical Defendants for negligence under Florida law. This Claim contemplates conduct that could, and likely does, fall outside the provision, or failure to provide, medical and/or mental health care, and includes, for example, breach of a duty on behalf of PHS and its employees to act reasonably in protecting the safety and well being of Nick Christie. Furthermore, the allegations are asserted against PHS employees who may ultimately be deemed not to be medical care providers subject to Florida's Medical Malpractice Act, but whose negligence, as alleged, proximately caused Nick Christie's death. Additionally, unlike Plaintiff's constitutional claims, *respondeat superior* liability can attach to PHS under Florida common law negligence principles. *See Gowan v. Bay County*, 744 So.2d 1136 (Fla. 1st Dist. Ct. App. 1999) (allegations that correctional facility employee forced inmate to remain outdoors for hours in sun causing injuries was sufficient to state a Florida negligence claim against operator of correctional facility on theory of vicarious liability). As is clear from the face of the Complaint, the Sixth Claim for Relief alleges a negligence claim(s) that is separate and discrete from Plaintiff's Seventh Claim for Relief for medical malpractice.

The Eleventh Claim for Relief asserts a Florida law action for negligent hiring, retention and/or supervision against Defendant PHS. This Claim challenges the credentials and qualifications of PHS's employees, as well as PHS's hiring and supervision of these employees. This claim contemplates conduct that is in no way related to the actual care (or lack thereof) provided to Nick Christie. The Medical Defendants' description of this Claim as one for medical malpractice constitutes a gross mischaracterization of the relevant facts and law. Plaintiff's allegations in her Eleventh Claim for Relief for negligent hiring, retention and supervision, and the cause of action asserted therein, are entirely different from and independent of the allegations and cause of action set forth in her Seventh Claim alleging medical malpractice. *See Green v. RJ Behar & Co.*, 2010 WL 1839262, *3 (S.D. Fla.) ("[a] cause of action for negligent hiring, retention and supervision is well-established in Florida"), *citing Mallory v. O'Neil*, 69 So.2d 313, 315 (Fla. 1954). That the claims may contemplate overlapping facts or damages is irrelevant. Furthermore, none of the cases cited by the Medical Defendants in their Motion hold that a Plaintiff may not bring a cause of action for negligent hiring, retention, or supervision against a company in the health care industry.

The Medical Defendants have failed to meet their burden under Rule 12(b)(6). Counts 6 and 11 of Plaintiff's Third Amended Complaint set forth separate and distinct claims from the claims for medical malpractice alleged in Count 7, and should not be dismissed.

### E. Plaintiff Alleges Sufficient Fact to State a Claim for Relief Against Defendant PHS for Assault and Battery.

The claim for assault and battery against Defendant PHS is premised upon the numerous factual allegations of the affirmative acts of the Medical Defendants, as set forth in

13

the Third Amended Complaint.  Plaintiff has alleged sufficient facts, which, if taken as true, state intentional affirmative conduct by the Medical Defendants that caused harmful contact with Nick Christie.  Defendant PHS may be held vicariously liable for assault and battery, if the factual allegations in the Complaint are taken as true.  It is well established in Florida that an employer may be held liable pursuant to the doctrine of *respondeat superior* for an assault or battery committed by its employee(s).  *See, e.g.*, *Martinez v. Pavex Corp.*, 422 F. Supp. 2d 1284, 1297-98 (M.D. Fla. 2006); *Ayers v. Wal-Mart Stores, Inc.*, 941 F. Supp. 1163, 1168 (M.D. Fla. 1996).  Plaintiff has alleged sufficient facts with regard to the actions of the individual Medical Defendants' actions and with regard to Defendant PHS's negligent hiring, supervision, training, failure to take corrective measures, and promulgation and maintenance of customs, policies, and procedures causing constitutional violations to state a plausible claim for assault and battery against Defendant PHS on the basis of vicarious liability.

> **F.    Plaintiff's Decedent, Nick Christie, Was Entitled to the Protection of the Fourth, Eighth and/or Fourteenth Amendments.**

Although Nick Christie's constitutional rights as a pre-trial detainee arose under the Fourteenth Amendment, "invoking" the Eighth Amendment is appropriate to the extent that decisional law interpreting the Eighth Amendment applies to set forth the applicable legal standards.  The Supreme Court applies its decisions "interpret[ing] the prohibition against cruel and unusual punishment provided in the Eighth Amendment," to a pre-trial detainee's rights under the Fourteenth Amendment:

> Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.

14

>       \*\*\*
>
>       ***However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.***

*Cotrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996), *citing Bell v. Wolfish*, 441 U.S. 520, 535 &n. 16 (1979) and *Jordan v. Doe*, 38 F.3d 1559, 1564-65 (11th Cir. 1994) (other citations omitted). "In fact, the due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983), *citing Bell*, 441 U.S. at 535, n. 16.

The Supreme Court recognizes a pre-trial detainee's Fourteenth Amendment right to be free from cruel and unusual punishment, and its decisional law governing a convicted criminal's Eighth Amendment right to be free from cruel and unusual punishment applies to cases involving pre-trial detainees. Accordingly, Mr. Christie, as a pre-trial detainee, had at least the same rights afforded to convicted criminals under the Eighth Amendment. Similarly, case law regarding the use of excessive force during the arrest process pursuant to the Fourth Amendment is useful to determine applicable standards for the treatment of pre-trial detainees, particularly with regard to the application of the obvious clarity standard. Accordingly, "invoking" the Fourth Amendment is also appropriate.

Regardless, however, while the Medical Defendants take issue with Plaintiff "invoking" the Fourth and Eighth Amendments, they do not seek the dismissal of any of Plaintiff's claims on this basis. Since no relief is sought, Defendants' argument that the mention of the Fourth and Eighth Amendments in the Complaint is improper should not be

considered by the Court.  The Medical Defendants' Motion in this regard is simply their legal analysis that is inappropriate at this time.

## IV.   CONCLUSION

For all of the foregoing reasons, and because the Medical Defendants have failed to meet the high burden for dismissal under Federal Civil Rule 12(b)(6), Plaintiff respectfully requests the Court deny the Medical Defendants' Motion to Dismiss in its entirety.

Respectfully submitted,

s/ Nicholas A. DiCello
WILLIAM HAWAL  (Ohio Bar No. 0006730) (PHV)
STUART E. SCOTT  (Ohio Bar No. 0064834) (PHV)
NICHOLAS A. DICELLO  (Ohio Bar No. 0075745) (PHV)
NICOLE GREER  (Ohio Bar No. 0079736) (PHV)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue, Suite 1700
Cleveland, OH  44114
(216) 696-3232; (216) 696-3924 (FAX)
*whawal@spanglaw.com*
*sscott@spanglaw.com*
*ndicello@spanglaw.com*
*ngreer@spanglaw.com*
***Trial Counsel for Plaintiff***

s/ Troy A. Rafferty
TROY A. RAFFERTY (Florida Bar No. 024120)
VIRGINIA M. BUCHANAN (Florida Bar No. 793116)
**LEVIN PAPANTONIO THOMAS MITCHELL ECHSNER RAFFERTY & PROCTOR P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL  32502
(850) 435-7000
(850) 497-7059 (FAX)
*trafferty@levinlaw.com*
*vbuchanan@levinlaw.com*
***Local Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this **18th** day of February 2011, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System, which will send the foregoing to the following:

| | |
|---|---|
| GREGG A. TOOMEY<br>**BUNNELL & WOULFE, P.A.**<br>1625 Hendry Street, Suite 203<br>Fort Myers, FL 33901 | *Counsel for Defendants,*<br>*Prison Health Services, Inc., Marie*<br>*Canete, R.N., Linda Sundo, L.P.N.,*<br>*Natalia Saunders, R.N., Joan Winnie,*<br>*R.N., Geraldine Jones, R.N., Janice*<br>*Stepnoski, L.C.S.W., Karen Overbee,*<br>*Christine Aten, Tammy Hamilton, R.N.,*<br>*and Kathryn T. Hollier, C.N.A.* |
| SUMMER M. BARRANCO<br>**PURDY JOLLY GIUFFREDA**<br>**& BARRANCO, P.A.**<br>2455 East Sunrise Boulevard, #1216<br>Fort Lauderdale, FL 33304 | *Counsel for Defendants,*<br>*Sheriff Scott, Deputy Falzone,*<br>*Deputy Gibbs, Deputy Calhoun,*<br>*Deputy Hansen, Deputy Pyle,*<br>*Deputy Hardin, Deputy Eldridge,*<br>*Deputy DiMarco, Sergeant Croker,*<br>*Sergeant DaRoss, Sergeant Bramblet,*<br>*and Lieutenant Peak* |

s/ Nicholas A. DiCello
WILLIAM HAWAL (Ohio Bar No. 0006730) (PHV)
STUART E. SCOTT (Ohio Bar No. 0064834) (PHV)
NICHOLAS A. DICELLO (Ohio Bar No. 0075745) (PHV)
NICOLE GREER (Ohio Bar No. 0079736) (PHV)
**SPANGENBERG SHIBLEY & LIBER LLP**
*Trial Counsel for Plaintiff*