**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

JOYCE CHRISTIE, Individually and on
Behalf of the Estate and Next of Kin of
Nicholas T. Christie, Dec'd.,

    Plaintiff,

v.                                                   CASE NO. 2:10-CV-420-FtM-36DNF

LEE COUNTY SHERIFF'S OFFICE,
MICHAEL J. SCOTT, in his official capacity
as Sheriff of Lee County, Florida, PRISON
HEALTH SERVICES, INC., a Tennessee
corporation, DEPUTY DANIEL FALZONE,
DEPUTY MONSHAY GIBBS, DEPUTY
KURTIS CALHOUN, DEPUTY FRANK J.
HANSEN, DEPUTY DATHAN S. PYLE,
DEPUTY JEREMY HARDIN, DEPUTY
TIMOTHY H. ELDRIDGE, DEPUTY
ANDRE DIMARCO, SERGEANT
ARMANDO CROKER, SERGEANT MARY
DAROSS, LIEUTENANT MICHAEL PEAK,
MARIA CANETE, R.N., LINDA SUNDO,
L.P.N., NATALIA SAUNDERS, R.N., JOAN
WINNIE, R.N., GERALDINE JONES, R.N.,
JANICE STEPNOSKI, L.C.S.W., KAREN
OVERBEE, CHRISTINE ATEN, TAMMY
HAMILTON, R.N., KATHRYN T. HOLLER,
C.N.A.,

    Defendants.
_____/

**<u>ORDER</u>**

    This cause comes before the Court on several motions to dismiss Plaintiff Joyce Christie's

Third Amended Complaint ("Complaint") (Doc. 65), filed on January 10, 2011.  In this Order, the

Court addresses the Motion to Dismiss of Sheriff Mike Scott ("Defendant Scott"), filed on January

20, 2011. On February 7, 2011, Plaintiff filed her Memorandum in Opposition to Scott's Motion to Dismiss. (Doc. 75). For the reasons that follow, Defendant Scott's motion will be granted in part and denied in part.

## BACKGROUND

This case stems from the death of Plaintiff's husband, Nick Christie ("Decedent"). Plaintiff, in her individual capacity and as personal representative of the estate of Decedent, filed her Complaint (Doc. 65) naming, among others[1], Sheriff Mike Scott as a defendant.

Plaintiff alleges that while housed at the Lee County Jail, Decedent was sprayed numerous times, including while confined to a jail cell and while strapped to a chair with a hood over his head, with Oleoresin Capsicum ("pepper spray") (Doc. 65, ¶¶ 56-79). Moreover, Plaintiff alleges this conduct occurred with knowledge of Decedent's preexisting serious medical and mental health conditions *(Id.* at ¶¶ 36-43). Plaintiff further alleges Decedent's death, which occurred within days of his release from jail, was directly and proximately caused by Defendants' actions and/or inactions *(Id.* at ¶ 80).

The Complaint sets forth § 1983 claims against Defendant for failure to supervise, train, and take corrective measures causing constitutional violations ("Count III"), promulgating and maintaining customs, policies, or practices with regard to the use of excessive force in the Lee County Jail ("Count IV"), and promulgating and maintaining customs, policies, or practices which delay and/or deny adequate medical and mental health care to detainees at the Lee County Jail ("Count V"). Additionally, pursuant to Florida law, the Complaint sets forth claims against

---

[1] Plaintiff's Third Amended Complaint also names Prison Health Services as well as other correctional officers and health care personnel employed in the Lee County Jail. These parties have filed separate motions to dismiss the Third Amended Complaint. *See* Docs. 68, 72, 77.

Defendant Scott for assault and battery ("Count VIII") and two counts of negligent hiring, retention, and supervision ("Count IX" and "Count X").

## LEGAL STANDARD

To survive a motion to dismiss, a pleading must include a "'short and plain statement showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* (citing *Bell Atlantic Corp, et al. v. Twombly, et al.*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Mere naked assertions, too, are insufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*. at 1950. Therefore, "only a claim that states a plausible claim for relief survives a motion to dismiss." *Id*. (citation omitted).

## ANALYSIS

### I. Claims Brought Pursuant to 42 U.S.C. § 1983: Counts III, IV, and V

In Counts III, IV, and V, Plaintiff brings federal constitutional claims pursuant to 42 U.S.C. § 1983 against Defendant Scott in his official capacity. Defendant Scott argues that Plaintiff has not sufficiently alleged an underlying constitutional violation, as required by § 1983.

A claim against a state or municipal officer in his official capacity is treated as a claim against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d

114 (1985). In that respect, any plaintiff bringing a § 1983 claim against a municipality based on the acts of one of its officers must prove two things. First, plaintiff must sufficiently allege a constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986). Second, the "plaintiff suing a municipality under § 1983 must show that the municipality itself injured the plaintiff by having in place a policy or custom which violated the plaintiff's rights." *Buckner v. Toro*, 116 F.3d 450, 451 (11th Cir. 1997) (citing *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Under *Monell*, the municipal "policy" or "custom" must be the moving force behind the constitutional violation and "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by the municipality can the failure be properly thought of as an actionable city 'policy.'" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379, 109 S.Ct. 1197, 1200, 103 L.Ed.2d 412 (1989).

Additionally, "[a] municipality may, in certain circumstances, be held liable under § 1983 for constitutional violations resulting from its failure to train its employees." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379, 109 S.Ct. 1197, 1199, 103 L.Ed.2d 412 (1989). One of the circumstances is where the "failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact." *Id.*

Here, Plaintiff has alleged sufficient facts to state a constitutional violation of excessive force. The test determining whether the use of force is excessive asks if it "shocks the conscience and it necessarily will if the force was applied . . . maliciously and sadistically for the very purpose of causing harm." *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) overruled on other grounds by *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010) (citing *Whitney v. Albers*, 475 U.S. 312, 321 (1986)). Five factors are considered under the "shocks the conscience" test: (1) the

need for force; (2) the relationship between that need and the amount of force used; (3) the extent of the resulting injury; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Id.*

With regard to the need for force and the relationship between that need and the amount of force used, it is alleged that Decedent was pepper sprayed numerous times, including while confined to a jail cell, handcuffed, and strapped to a chair. (Doc. 65, ¶¶ 56-79). With regard to the extent of the resulting injury, Plaintiff alleges that the degree of force was the direct and proximate cause of Decedent's death. (*Id.* at ¶¶ 80). With regard to the extent of the threat to safety and efforts made to temper the severity of a forceful response, there is very little information in the record regarding Decedent's behavior during this time period. However, Plaintiff alleges Decedent had been arrested on the misdemeanor charge of trespassing and was restrained in some way through much of his detention.

Likewise, Plaintiff alleges sufficient facts to state a constitutional violation of deliberate indifference to Decedent's serious medical and mental health needs.. To show an official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). The plaintiff must satisfy the objective component by showing that he had a serious medical need. *Goebert*, 510 F.3d at 1326. To satisfy the subjective component, a plaintiff must show that the official acted with deliberate indifference to a serious medical need by proving: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than [gross] negligence." *Bozeman v. Orum*, 422 F.3d 1265, 1272

(11th Cir. 2005). Plaintiff alleges a serious medical need, including that Decedent suffered from several medical and mental health conditions. (Doc. 27, ¶ 36). In addition, Plaintiff alleges that she and Decedent repeatedly told Defendants of Decedent's serious medical need. *Id.* at ¶ 42. As such, Plaintiff has sufficiently alleged that Corrections Officer Defendants knew or should have known of Decedent's serious medical and mental need. Further, Plaintiff's allegations that Decedent was pepper sprayed numerous times, including while confined to a jail cell and while strapped to a chair with a hood over his head sufficiently establish disregard for risk to Decedent that constituted more than gross negligence.

Similarly, Plaintiff has alleged sufficient facts to state a constitutional violation of failure to supervise, train, and take corrective measures. Supervisory officials may "be liable under § 1983 when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396-7 (11th Cir. 1994) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1991)). Plaintiff alleges that DiMarco, DaRoss, Bramblet, Croker, and Peak were each in supervisory positions which allowed them to supervise and/or ratify the use of force upon Decedent (Doc. 65 at ¶¶ 57, 58, 60, 62, 64, 67, 69, 72 78). Plaintiff further alleges that the degree of force Decedent was subjected to was the direct and proximate cause of his death (*Id.* at ¶ 80). Plaintiff also contends that Defendant Scott knew or should have known of a custom for PHS employees and Lee County Corrections Deputies to refuse to provide prompt access and adequate mental health and medical care (*Id.* at ¶ 96). Likewise, it is alleged that Decedent's failure to receive adequate mental health and medical care directly and proximately caused his death (*Id.* at ¶¶ 100, 101, 102).

Defendant Scott notes that Plaintiff has failed to make mention of the Decedent's behavior during the relevant time period. This is true, however it is not necessary at this stage of the litigation. Plaintiff is only required to state a claim for relief that is plausible on its face, which she has done.

Defendant Scott relies heavily on the claim that Plaintiff has not sufficiently alleged an underlying constitutional violation, pursuant to § 1983. As such, no argument is made as to the second prong of a § 1983 analysis: whether the municipality itself injured the plaintiff by having in place a policy or custom which violated the plaintiff's rights. Plaintiff addressees this topic at length in her Memorandum in Opposition to Defendant Scott's Motion to Dismiss (Doc. 75, pp. 7-10). Plaintiff has sufficiently alleged the existence of a policy or custom which violated the Decedent's rights.

Accordingly, this Court finds Plaintiff has sufficiently alleged the underlying constitutional violations for Counts III, IV, and V in addition to alleging facts sufficient to establishing a policy or custom which violated Plaintiff's rights.

### A. Injunctive Relief in Counts IV and V

Plaintiff seeks injunctive relief in Counts IV and V. Defendant argues that Plaintiff's claims are moot because there is not a present case or controversy. (Doc. 67, p. 6). "To satisfy the 'case or controversy' requirement of Article III, a plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct . . .". *City of Los Angeles v. Lyons*, 461 U.S. 95, 95, 103 S.Ct. 1660, 1662, 75 L.Ed.2d 675 (1983). "Past exposure to illegal conduct does not in and of itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse

effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96, 94 S.Ct. 669, 675-76, 38 L.Ed.2d 674 (1974). However, a court may refuse to dismiss as moot claims in which the former controversy is one "capable of repetition, yet evading review." *Morgan v. Ocwen Loan Servicing, LLC*, 2011 WL 2650194 at *2 (N.D.Ga July 27, 2011) (citing *United Steelworkers of America v. Bishop*, 598 F.2d 408, 412 (5th Cir. 1979).[2] "Claims will be preserved for review on that basis when they meet the following criteria: (1) the challenged action was too brief in duration to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable likelihood that the plaintiff will face the same challenged conduct again. *Id.*" Plaintiff does not fit into either of these categories. Therefore, the Court finds that Plaintiff's request for injunctive relief in Counts IV and V are moot. They will be dismissed from the Third Amended Complaint.

### B. Punitive Damages in Count III

Defendant Scott seeks to dismiss Plaintiff's request for punitive damages in Count III. (Doc. 67, p. 12). In her Memorandum in Opposition to the Motion to Dismiss of Sheriff Mike Scott (Doc. 75), Plaintiff states that she is not seeking punitive damages against Defendant Scott in his official capacity in Count III, but rather against the remaining named defendants. *See* Doc. 75, p. 18. As such, the Court finds this request is moot.

### II. State Law Claims: Counts VIII, IX, and X

### A. Assault and Battery

In Count VIII, Plaintiff seeks to hold Defendant Scott liable for the acts of his employees. Florida law does not prohibit vicarious liability on the part of a municipality for the torts committed

---

[2]In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

by individual officers. *See Brisk v. City of Miami Beach, Florida*, 709 F.Supp. 1146, 1148 (S.D.Fla. 1989). As such, it is possible for Defendant Scott to be held vicariously liable for the torts of the Corrections Officer Defendants if the underlying tort is proved.

An assault is "an intentional, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril." *Sullivan v. Atlantic Fed. & Loan Ass'n*, 454 So.2d 52, 54 (Fla. 4th DCA 1984). On the other hand, an actor is subject to liability to another for the intentional tort of battery if (1) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (2) an offensive contact of the other directly or indirectly results. *City of Miami v. Sanders*, 672 So.2d 46, 47 (Fla. 3d DCA 1996) (citing Restatement (Second) of Torts § 18).

Defendant Scott argues that Plaintiff has taken two inconsistent legal theories. In that respect, he points out that if the Corrections Officer Defendants acted outside of the course and scope of their employment, in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard to human rights, safety, or property, each of the wrongdoers may be sued in their individual capacity. *See* Fla. Stat. § 768.28(9)(a). However, if the Corrections Officer Defendants acted within the course and scope of their employment and did not exhibit any of these factors, the constitutional officer who employs them may be sued in his or her official capacity. *Id.* Therefore, according to Defendant Scott, despite both being pled, both could not in fact have occurred.

The Court agrees that these legal theories are inconsistent. However, as Defendant Scott points out, they may be pled in the alternative. *See e.g. Johnson v. Sackett*, 793 So.2d 20 (Fla. 2nd

DCA 2001). Therefore, even though inconsistent, both legal theories may be pled. Plaintiff, however, cannot recover on both theories.

In addition, Plaintiff has alleged sufficient facts to state a claim for assault and battery against various defendants employed by Defendant Scott. Specifically, sufficient facts have been alleged to state a claim for assault and battery against Falzone, Calhoun, Pyle, Hardin, Eldridge, and DaRoss. Thus, the Court finds Plaintiff has alleged sufficient facts to state a claim for assault and battery against Defendant Scott in his official capacity.

### B. Negligent Hiring, Retention, and Supervision: Counts IX and X

In Counts IX and X, Plaintiff alleges Defendant Scott was negligent in hiring, firing, and supervising his employees. In this regard, Defendant Scott asserts he is immune from tort liability.

The State of Florida and its subsidiaries, including municipalities, are generally immune from tort liability. *See* Fla. Const., Art. X, § 13. However, Florida has waived this immunity "under circumstances in which the state agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state. Fla. Stat. § 768.28(1). Nonetheless, "even if the claim contained sufficient allegations of tort liability under which a private person would be liable, the waiver of sovereign immunity would still not apply if the challenged acts of the state agent were 'discretionary' governmental acts rather than merely 'operational' ones." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001). Therefore, Defendant Scott may be held liable for negligent employment or supervision only if it constitutes an operational act, but not if it constitutes a discretionary one.

An act is "discretionary" if it involves an "exercise of executive or legislative power such that, for the court to intervene by way of tort law would inappropriately entangle it in fundamental

questions of policy and planning." Id. at 1264-54 (quoting *Dept. Of Health and Rehabilitative Serv. v. Yamuni*, 529 So.2d 258, 260 (Fla. 1988)). On the other hand, an "operational act" is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented. *Id.*

Defendant Scott argues that before reaching the issue of whether government activity is operational or discretionary, there must be first a duty of common law or statutory care. (Doc. 67, p. 10). Defendant Scott bases this contention primarily on *Trianon Park Condominium v. City of Hialeah*, 468 So.2d 912 (Fla. 1985). In that case, a condominium association filed a negligence action against the city for acts and omissions in inspecting and certifying the construction of the condominium building. *Id.* The court went on to find that the city could not be held liable in tort to individual owners of condominiums who sustained damages due to building defects allegedly arising out of the negligent actions of the city building inspectors. In doing so, the court in *Trianon* went on to state that "[i]n order to subject the government to tort liability for operational phase activities, there must first be either an underlying common law or statutory duty in the absence of sovereign immunity. *Id.* at 919; see also *Kaisner v. Kolb*, 543 So.2d 732, 734 (Fla. 1989)).

Florida law indicates "a petitioner is owed a duty of care if he has been placed in some sort of custody or detention by a law enforcement officer." *Williams v. City of Daytona Beach*, 2005 WL 1421293 at *3 (M.D.Fla. June 16, 2005) (finding a duty of care was owed to a plaintiff who sustained injuries while being taken into custody by city police officers); *see also*, *Kaisner*, 543 So.2d at 734 (" . . . petitioner was owed a duty of care by the police officers when he was directed to stop . . . "), *Lewis*, 260 F.3d at 1263 (" . . . when a defendant, including a police officer, by his or her conduct creates a foreseeable zone of risk, the law imposes a duty owed by the defendant to all

individuals within the zone to act with reasonable care." ). In this case, it is alleged that Decedent was in the custody of the defendants. Therefore, he was owed a duty of care.

Defendant Scott further relies on *Maybin v. Thompson* for the contention that " . . . the employment of police officers is generally considered to be an immune policy-making activity . . . ". 514 So.2d 1129, 1130 (Fla. 2d DCA 1987). As a general assertion, this may be true. However, *Maybin* does not create binding precedent that a municipality may never be held liable for negligent hiring, retention, and supervision. In fact, more than one Florida court has explicitly held " . . . there is no sovereign immunity barrier to making a claim against a governmental agency for negligent retention or supervision." *Dickinson v. Gonzalez*, 839 So.2d 709, 713 (Fla. 3d DCA 2003); *see also Willis v. Dade County School Bd.*, 411 So.2d 245, 246 (Fla. 3d DCA 1982).

Therefore, Plaintiff has established that Decedent was owed a duty by law enforcement personnel and that hiring, firing, and supervision is not necessarily an immune activity. As such, at this stage of the litigation, Defendant Scott is not entitled to sovereign immunity.

### C.   Individual Capacity in Counts IX and X

Counts IX and X are brought against Defendant Scott in his individual capacity. (Doc. 65, pp. 57, 60). Fla. Stat. § 768.28(9)(a) reads, "[n]o officer, employee, or agent of the state or any of its subdivisions shall be held personally liable in tort . . . in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human, rights, safety, or property." Thus, Defendant Scott cannot be held liable in his individual capacity unless his behavior conformed with this standard.

There are no allegations in the Third Amended Complaint to support a plausible claim for relief that Defendant Scott acted outside of the scope of his employment. Moreover, there are no allegations supporting the idea that he acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human, rights, safety, or property. Therefore, Counts IX and X will be dismissed to the extent that they are brought against Defendant Scott in his individual capacity.

### III.   Attorneys' Fees - State Law Claims

Defendant Scott moves to dismiss any request for attorneys' fees in Counts VIII, IX, and X. Defendant Scott alleges such fees are not recoverable in state tort claims. *See Price v. Taylor*, 890 So.2d 246 (Fla. 2004) ("Today, we reaffirm and reiterate our well-established rule that under Florida law, each party is responsible for its own attorneys' fees unless a contract or statute provides otherwise . . . "). Plaintiff argues that many exceptions to this rule exist, but fails to list one that may apply. As such, Plaintiff's request for attorneys' fees is dismissed without prejudice as to Counts VIII, IX, and X. *See* Rule 54(d)(2) (claim for attorney's fees must be made by motion....)

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1. The Motion to Dismiss Plaintiff's Third Amended Complaint filed by Sheriff Mike Scott (Doc. 67) is **GRANTED in part and DENIED in part**.

2. Plaintiff's request for injunctive relief in Counts IV and V is **DISMISSED** as moot.

3. Plaintiff's request for punitive damages against Defendant Scott in his official capacity in Count III is **DISMISSED** as moot.

4. Counts IX and X are **DISMISSED, without prejudice,** as to Defendant Scott in his individual capacity.

5. Plaintiff's request for attorneys' fees in Counts VIII, XI, and X are **DISMISSED,** without prejudice.

6. In all other respects, the Motion to Dismiss Plaintiff's Third Amended Complaint filed by Sheriff Mike Scott is **DENIED**.

7. The Clerk is directed to enter judgment accordingly as to the dismissed claims.

**DONE AND ORDERED** at Ft. Myers, Florida, on September 21, 2011.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

**COPIES TO**:
COUNSEL OF RECORD