**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

JOYCE CHRISTIE, Individually and on
Behalf of the Estate and Next of Kin of
Nicholas T. Christie, Dec'd.,

      Plaintiff,

v.                                                      CASE NO. 2:10-CV-420-FtM-36DNF

LEE COUNTY SHERIFF'S OFFICE,
MICHAEL J. SCOTT, in his official capacity
as Sheriff of Lee County, Florida, PRISON
HEALTH SERVICES, INC., a Tennessee
corporation, DEPUTY DANIEL FALZONE,
DEPUTY MONSHAY GIBBS, DEPUTY
KURTIS CALHOUN, DEPUTY FRANK J.
HANSEN, DEPUTY DATHAN S. PYLE,
DEPUTY JEREMY HARDIN, DEPUTY
TIMOTHY H. ELDRIDGE, DEPUTY
ANDRE DIMARCO, SERGEANT
ARMANDO CROKER, SERGEANT MARY
DAROSS, LIEUTENANT MICHAEL PEAK,
MARIA CANETE, R.N., LINDA SUNDO,
L.P.N., NATALIA SAUNDERS, R.N., JOAN
WINNIE, R.N., GERALDINE JONES, R.N.,
JANICE STEPNOSKI, L.C.S.W., KAREN
OVERBEE, CHRISTINE ATEN, TAMMY
HAMILTON, R.N., KATHRYN T. HOLLER,
C.N.A.,

      Defendants.
_____/

**<u>ORDER</u>**

      This cause comes before the Court on several motions to dismiss Plaintiff Joyce Christie's

Third Amended Complaint ("Complaint") (Doc. 65). In this Order, the Court addresses the Motions

to Dismiss of Defendants Daniel Falzone ("Falzone"), Kurtis Calhoun ("Calhoun"), Dathan Pyle

("Pyle"), Jeremy Hardin ("Hardin"), Timothy Eldridge ("Eldridge"), Armando Croker ("Croker"), Mary DaRoss ("DaRoss"), Robert Bramblet ("Bramblet"), and Michael Peak ("Peak") (Doc. 68) and Defendant Andre DiMarco ("DiMarco") (Doc.77) (collectively, the "Corrections Defendants"). DiMarco was served on January 31, 2011, and thus did not join in the remaining Corrections Defendants' Motion to Dismiss. However, the claims and defenses in DiMarco's Motion to Dismiss (Doc. 77) are indistinguishable from those of the remaining Corrections Defendants (Doc. 68). As such, both Motions will be considered together by the Court. Plaintiff filed a Memorandum in Opposition to the Corrections Defendants' Motion to Dismiss (Doc. 74) and to DiMarco's Motion to Dismiss. (Doc. 79). For the reasons that follow, the motion will be granted in part and denied in part.

## **BACKGROUND**

This case stems from the death of Plaintiff's husband, Nick Christie ("Decedent"). Plaintiff, in her individual capacity and as personal representative of the estate of Decedent, filed her Complaint (Doc. 65) naming, among others[1], Falzone, Gibbs, Calhoun, Hansen, Pyle, Hardin, Eldridge, DiMarco, DaRoss, Croker, Bramblet, and Peak as defendants[2].

Plaintiff alleges that while housed at the Lee County Jail, Decedent was sprayed numerous times, including while confined to a jail cell and while strapped to a chair with a hood over his head, with Oleoresin Capsicum ("pepper spray") (Doc. 65, ¶¶ 56-79). Moreover, Plaintiff alleges this

---

[1]Plaintiff's Third Amended Complaint also names Prison Health Services, Sheriff Mike Scott, as well as other health care personnel employed by Prison Health Services in the Lee County Jail. These parties have filed separate motions to dismiss the Third Amended Complaint. *See* Docs. 67, 72.

[2]On August 12, 2011, the Court approved a dismissal with prejudice of Deputy Monshay Gibbs and Deputy Frank J. Hansen. (Doc. 98).

conduct occurred with knowledge of Decedent's preexisting serious medical and mental health conditions. *(Id.* at ¶¶ 36-43). Plaintiff further alleges Decedent's death, which occurred within days of his release from jail, was directly and proximately caused by the Corrections Defendants' actions and/or inactions. (*Id.* at ¶ 80).

The Complaint sets forth claims against Falzone, Calhoun, Pyle, Hardin, Eldridge, Croker, DiMarco, DaRoss, Bramblet, and Peak pursuant to § 1983 for excessive force in violation of the 14th Amendment ("Count I"), deliberate indifference to serious medical and mental health needs in violation of the 14th Amendment ("Count II"), and state law claims for assault and battery ("Count VIII"). The Complaint also sets forth a § 1983 claim against Croker, DiMarco, DaRoss, Bramblet, and Peak for failure to supervise, train, and take corrective measures causing constitutional violations ("Count III").

## **LEGAL STANDARD**

To survive a motion to dismiss, a pleading must include a "'short and plain statement showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* (citing *Bell Atlantic Corp, et al. v. Twombly, et al.*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Mere naked assertions, too, are insufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual

allegation" in the complaint. *Id*. at 1950. Therefore, "only a claim that states a plausible claim for relief survives a motion to dismiss." *Id*. (citation omitted).

## ANALYSIS

### I. Qualified Immunity

The Corrections Defendants assert that Plaintiff has failed to plead facts sufficient to overcome the defense of qualified immunity, and therefore contend that Counts I, II, and III should be dismissed. Plaintiff responds that she has alleged sufficient facts from which the Court may determine that the Corrections Defendants' actions violated a clearly established constitutional right of the Decedent.

With regard to § 1983 claims, "[q]ualified immunity offers complete protection for government officials sued in their individual capacities when acting within their discretionary authority if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1305 (11th Cir. 2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The standard for qualified immunity is well established. First, the government official must show that he was engaged in a "discretionary function" when he committed the allegedly unlawful acts. *See Corey Airport Servs., Inc. v. Decosta*, 587 F.3d 1280, 1285 (11th Cir. 2009). If the defendant was not acting within the scope of his discretionary authority, he is ineligible for the benefit of qualified immunity. *Id.* If, however, the defendant does meet the initial burden of establishing that he was acting within the scope of his discretionary authority, then the burden shifts to the plaintiff to show that qualified immunity is inappropriate. *Id.*

To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were: "(1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Gray ex. rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006). There appears to be no dispute that at all relevant times, the Corrections Defendants were acting within the course and scope of their employment with the Lee County Sheriff and engaging in a discretionary function. (*See* Doc. 65, ¶¶ 26-29).

The burden would then shift to Plaintiff to show that qualified immunity is inappropriate. To do so, the plaintiff must satisfy the two-prong test articulated by the Supreme Court in *Sacier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) showing (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the violation. 533 U.S. at 201, 121 S.Ct. at 2156. "Clearly established" means that it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Id.* Therefore, the question for this Court in assessing the Corrections Defendants' immunity from damages is whether, taking all of Plaintiff's allegations as true, the Complaint alleges the violation of a clearly established constitutional right. *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003).

    A.    **Count I: Excessive Force**

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force during the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). The test for claims of excessive force as to pretrial detainees is whether the use of force "shocks the conscience". *Nasseri v. City of Athens*, 373 Fed. Appx. 15, 17 (11th Cir. 2010). Additionally, the use of pepper spray has been found to constitute excessive force. *See Thomas v. Bryant,* 614 F.3d 1288 (11th Cir. 2010); *Vineyard v. Wilson*, 311

F.3d 1340 (11th Cir. 2002). The question then is whether a reasonable official would have known his conduct was unlawful in the situation presented to the Corrections Defendants. As alleged in the Complaint, Decedent was pepper sprayed numerous times while restrained, including while confined to a jail cell, handcuffed, and strapped to a chair. (Doc. 65, ¶¶ 56-79). Further, Plaintiff alleges that the degree of force was the direct and proximate cause of Decedent's death. (*Id.* at ¶ 80). There is very little information in the record regarding Decedent's behavior during this time period. However, Plaintiff alleges Decedent had been arrested on the misdemeanor charge of trespassing and was restrained in some way through much of his detention. The Court finds sufficient facts have been alleged to establish the Corrections Defendants violated Decedent's clearly established constitutional right to be free from excessive force. Accordingly, at this stage of the litigation, a dismissal on qualified immunity grounds is not warranted.

### B. Count II: Deliberate Indifference

Deliberate indifference to serious medical needs may serve as grounds for a constitutional violation for pretrial detainees under the Fourteenth Amendment. *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005). Such claims are analyzed under the standards articulated in Eighth Amendment case law. *Id.* citing *Marsh v. Butler County, Alabama.*, 268 F.3d 1014, 1024 (11th Cir. 2001) ("the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments"). To prove deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007). Serious medical need may be proven in two ways: one is if delay in treating the condition worsens it, and the other is if the need has been diagnosed by a

doctor as mandating treatment or one that is so obvious a lay person would easily recognize the need for a doctor's attention. *Nasseri,* 373 Fed. Appx. at 19. Deliberate indifference to that need may be proven by: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence. *Id*. at 20 (quotation omitted). The right to medical treatment is a clearly established constitutional right.

Plaintiff alleges a serious medical need on Decedent's behalf, including that he suffered from several medical and mental health conditions. (Doc. 65, ¶ 36). In addition, Plaintiff alleges that she and Decedent repeatedly told Defendants of Decedent's serious medical need. *Id.* at ¶ 42. Moreover, Plaintiff alleges the Correctional Defendants took custody of a list of at least 10 prescriptions Decedent was being prescribed at the time. *Id.* at 43.

Plaintiff has sufficiently alleged Decedent had serious medical and mental health needs and that the Correctional Defendants knew or should have been on notice of his conditions. Further, Plaintiff's allegations that Decedent was pepper sprayed numerous times, including while confined to a jail cell and while strapped to a chair with a hood over his head sufficiently establish disregard for risk to Decedent that constituted more than gross negligence. Finally, Plaintiff alleges that this deliberate indifference caused the death of Decedent. As such, the Court finds sufficient facts have been alleged to establish the Corrections Defendants violated Decedent's clearly established constitutional right. Accordingly, at this stage of the litigation, a dismissal on qualified immunity grounds is not warranted.

### C. Count III: Failure to Supervise, Train, or take Corrective Measures

Supervisory officials may "be liable under § 1983 when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Belcher v. City of*

*Foley, Ala.*, 30 F.3d 1390, 1396-7 (11th Cir. 1994) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1991)). "A causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so,' or when the supervisor's improper 'custom or policy...resulted in deliberate indifference to constitutional rights.'" *Gonzalez,* 325 F.3d at 1234 (citation omitted). "A causal connection can also be established by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id*. at 1235.

Plaintiff alleges that DiMarco, DaRoss, Bramblet, Croker, and Peak were each in supervisory positions which allowed them to supervise and/or ratify the use of force upon Decedent. (Doc. 65 at ¶¶ 57, 58, 60, 62, 64, 67, 69, 72, 78). Plaintiff further alleges that these Defendants knew or should have known of a history or custom for employees at the Lee County Jail to fail or refuse to provide prompt medical and mental health care. *Id.* at ¶¶ 96, 98. Moreover, Plaintiff contends that the degree of force Decedent was subjected to was the direct and proximate cause of his death. *Id.* at ¶ 80.

As such, the Court finds sufficient facts have been alleged to establish the Corrections Defendants violated Decedent's clearly established constitutional right. Accordingly, at this stage of the litigation, a dismissal on qualified immunity grounds is not warranted.

## II.     Count VIII: Assault and Battery

The Corrections Defendants assert that Plaintiff has failed to plead facts sufficient to state a claim for assault and battery, and therefore Count VIII should be dismissed. Plaintiff disputes this argument.

An assault is "an intentional, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril." *Sullivan v. Atlantic Fed. & Loan Ass'n*, 454 So.2d 52, 54 (Fla. 4th DCA 1984). On the other hand, an actor is subject to liability to another for the intentional tort of battery if (1) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (2) an offensive contact of the other directly or indirectly results. *City of Miami v. Sanders*, 672 So.2d 46, 47 (Fla. 3d DCA 1996) (citing Restatement (Second) of Torts § 18).

In this respect, the Corrections Defendants argue that Plaintiff has taken two inconsistent legal positions. The Corrections Defendants assert that if they acted outside of the course and scope of their employment, in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard to human rights, safety, or property, each of the wrongdoers may be sued in their individual capacity. *See* Fla. Stat. § 768.28(9)(a). However, if the Correction Defendants acted within the course and scope of their employment and did not exhibit any of these factors, the constitutional officer who employs them may be sued in his or her official capacity. *Id*. Therefore, according to the Corrections Defendants, despite both positions being alleged, both could not in fact have occurred.

The Court agrees that these legal theories are inconsistent. However, as the Corrections Defendants point out, these legal theories may be alleged in the alternative. *See, e.g. Johnson v. Sackett*, 793 So.2d 20 (Fla. 2nd DCA 2001). Therefore, even though inconsistent, both legal theories may be asserted.

Moreover, sufficient facts have been alleged to state a claim for assault and battery with regard to Falzone, Calhoun, Pyle, Hardin, Eldridge, and DaRoss. Plaintiff alleges each of these individuals came into some form of harmful contact with Decedent. *See* Doc. 65 ¶¶ 57-58, 60, 62, 64, 67, 69, 71-72, 74. However, Plaintiff does not allege individual defendants Croker, Bramblet, Peak, or DiMarco had any type of harmful contact with Decedent. Therefore, Plaintiff fails to state a claim for assault and battery with regard to Croker, Bramblet, Peak, and DiMarco and they will be dismissed from Count VIII.

### III.     State Law Claims

The Florida Wrongful Death Act permits a cause of action "[w]hen the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person..., and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued." Fla. Stat. §768.19; *Knowles v. Beverly Enterprises-Fla., Inc.*, 898 So.2d 1, 8-9 (Fla. 2004). Additionally, "[w]hen a personal injury to the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate." Fla. Stat. §768.20; *see also Martin v. United Sec. Servs., Inc.*, 314 So.2d 765, 770 (Fla. 1975) (holding that no separate statutory action for personal injuries resulting in death can survive the decedent's demise).

The Florida Supreme Court has held that "Sections 768.16-768.27, Florida Statutes, are constitutional to the extent that they consolidate survival and wrongful death actions and substitute for a decedent's pain and suffering the survivors' pain and suffering as an element of damages." *Martin v. United Security Servs., Inc.,* 314 So.2d 765, 767 (Fla. 1975). In support of this holding, the Florida Supreme Court noted that the Wrongful Death Act was designed to ensure that any

recovery "be for the living and not for the dead." *Id.* At 768; *Fla. Convalescent Centers v. Somberg*, 840 So.3d 998, 1003 (Fla. 2003).

Here, Plaintiff alleges one state law claim against the Corrections Defendants. *See* Count VIII (Doc. 65). It is unclear if Plaintiff intended to assert this claim as a survivor action or wrongful death action. However, the Florida Wrongful Death statute merges survival actions for personal injuries and wrongful death actions into one. *Martin*, 314 So.2d at 768. Since Plaintiff alleges that the Decedent's injuries resulted in death, this count is properly classified and will be treated as a wrongful death action. As such, when amending the Complaint, Plaintiff shall comply with the provisions of the Wrongful Death Act, including § 768.21, which requires that all potential beneficiaries of a recovery for wrongful death be identified in the complaint.

### IV. Attorneys' Fees

The Corrections Defendants seek to strike Plaintiff's request for attorneys' fees in Count VIII (Doc. 65, ¶ 132) with regard to Falzone, Calhoun, Pyle, Hardin, Eldridge, Croker, DiMarco, DaRoss, Bramblet, Peak as such fees are generally not recoverable in state tort claims. *See Price v. Taylor*, 890 So.2d 246, 250-51 (Fla. 2004) (reaffirming the "well-established rule that under Florida law, each party is responsible for its own attorneys' fees unless a contract or statute provides otherwise . . .") *see also* Fl. Stat. 57.041. As such, Plaintiff's request for attorneys' fees is dismissed without prejudice as to Count VIII. *See* Rule 54(d)(2) (claim for attorney's fees must be made by motion...).

### V. Duplicative/Redundant Claims

The Corrections Defendants also argue that the official capacity claims in Count I, II, III, and VIII against Falzone, Calhoun, Pyle, Hardin, Eldridge, Croker, DaRoss, Bramblet, and Peak are duplicative of the official capacity claims brought against Sheriff Mike Scott and therefore should

be dismissed. (Doc. 68, p. 13). It is well-settled precedent that suits against a municipal officer in his official capacity and direct suits against municipalities are functionally equivalent. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166, 155 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).

However, with respect to Counts I, II, and III, Plaintiff's Complaint explicitly states that the Corrections Defendants are sued in their individual capacities. *See* Doc. 65, pp. 20, 27, 31. Moreover, in Count VIII, only Sheriff Mike Scott is listed as being sued in his official capacity. *Id.* at p. 55. As such, though not explicitly stated, it is reasonable to assume that Count VIII has been brought against the Corrections Defendants in their individual capacities as well.

"[T]he law permits an individual capacity suit against an individual officer, and, at the same time, an official capacity suit against a city or municipality, even if they arise out of the same claims and allegations." *Steen v. City of Pensacola*, 2011 WL 3667499 at *3 (N.D.Fla. Aug. 22, 2011) (finding an official sued in his individual capacity was not a "redundant party" where the city he worked for was sued as well); *see also Atheists of Florida, Inc. v. City of Lakeland, Florida*, 2011 WL 899661 at *12 (M.D.Fla. Mar. 15, 2011). Because Count VIII is construed as a claim against the Corrections Defendants in their individual capacities, it is not duplicative.

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1. The Motions to Dismiss Plaintiff's Third Amended Complaint filed by Falzone, Calhoun, Pyle, Eldridge, DaRoss, Croker, Bramblet, and Peak (Doc. 68) and by DiMarco (Doc. 77) are **GRANTED in part and DENIED in part**.

2. Defendants DiMarco, Croker, Bramblet, and Peak are **DISMISSED** from Count VIII.

3. Plaintiff's request for attorneys' fees in Count VIII is **DISMISSED** without prejudice.

4. In all other respects, the Motions to Dismiss Plaintiff's Third Amended Complaint are **DENIED**.

5. In order to avoid confusion of the issues and confusion of the jury, Plaintiff is given leave to file a Fourth Amended Complaint within **FOURTEEN (14) DAYS** from the date of this Order.

6. The Clerk is directed to enter judgment accordingly.

**DONE AND ORDERED** at Ft. Myers, Florida, on September 28, 2011.

Charlene Edwards Honeywell
United States District Judge

**COPIES TO**:
COUNSEL OF RECORD