UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOYCE CHRISTIE, INDIVIDUALLY, AND ON BEHALF OF THE ESTATE AND NEXT OF KIN OF NICHOLAS T. CHRISTIE, DECEASED,

**Case No. 2:10-cv-420-FtM-36DNF**

Plaintiff,

v.

MIKE SCOTT, Lee County Sheriff; PRISON HEALTH SERVICES, INC., a Tennessee Corporation; DEPUTY DANIEL FALZONE; DEPUTY KURTIS CALHOUN; DEPUTY DATHAN S. PYLE; DEPUTY JEREMY HARDIN; DEPUTY ANDRE DIMARCO; SERGEANT ARMANDO CROKER; SERGEANT MARY DAROSS; SERGEANT ROBERT BRAMBLET; LIEUTENANT MICHAEL PEAK; MARIA CANETE, R.N.; LINDA SUNDO, L.P.N.; NATALIA SAUNDERS, R.N.; JOAN WINNIE, R.N.; GERALDINE JONES, R.N.; JANICE STEPNOSKI, L.C.S.W.; KAREN OVERBEE, CHRISTINE ATEN; TAMMY HAMILTON, R.N.; KATHRYN T. HOLLIER, C.N.A.,

Defendants.
________________________________________/

**DEFENDANTS SHERIFF SCOTT, FALZONE, CALHOUN, PYLE, BRAMBLET. CROKER, AND DAROSS' MOTION IN LIMINE TO EXCLUDE EVIDENCE AT TRIAL (AND MEMORANDUM OF LAW)**

The Defendants, Sheriff Mike Scott, Deputy Daniel Falzone, Deputy Kurtis Calhoun, Deputy Dathan Pyle, Sgt. Robert Bramblet, Sgt. Armando Croker, and Sgt. Mary DaRoss, through their undersigned attorneys, pursuant to Rules 402 and 403 of the Federal Rules of Evidence, file this their Motion in Limine (and Memorandum of Law) and in support thereof would state as follows:

1. The instant matter concerns the treatment of the decedent Nicholas Christie while he was a detainee at the Lee County Jail in March of 2009. Specifically, the operative Complaint in this matter (Fifth Amended Complaint) includes claims of §1983 excessive force and deliberate

indifference to serious medical and mental health needs, §1983 failure to supervise, train and take corrective measures, assault and battery as well as negligent hiring, retention and supervision.

2. This matter had been set for the trial docket beginning March 3, 2013. See Order dated August 24, 2012 [DE#233].

3. In an effort to stream line the issues for the Court's consideration during the upcoming trial of this case these Defendants submit the instant motion. However, it does not, and frankly cannot, contain all evidentiary issues that are going to be presented during trial to which these Defendants may raise an objection.

4. At this time, it is anticipated that the Plaintiff will argue through counsel or attempt to introduce the following into evidence during the trial of this matter. The issues as enumerated below are not properly admissible pursuant to the applicable Federal Rules of Evidence.

a.) As a result of unrelated incidents, the fact that the Defendants Maryann DaRoss and Andre Croker were subsequently demoted from the rank of sergeant to the rank of deputy.

b) The fact that the manufacturer of the O.C. spray included a label on the O.C. spray cans that indicate that pepper spray can only be used in self defense and that any other use can be considered criminal behavior.

c) Evidence regarding the use (or non-use) of O.C. spray or restraint chairs in any other correctional facilities, other than the Lee County Jail, where the subject incident occurred.

d) Testimony by experts or information from an expert's report which contains opinions which are outside the scope of that particular expert's expertise

e). Evidence regarding the post-mortem psychiatric diagnoses made of the decedent Nicholas Christie by medical examiner (Dr. Pfalzsgraf) as well as any other expert such as Plaintiff's expert Dr. Sally Johnson (forensic psychiatrist).

f). Evidence of the fact that Joyce Christie received a capias warrant for Nicholas

Christie after his death.

g) Evidence concerning the contents of the wallet of Nicholas Christie which although taken into his property at the jail for safekeeping pursuant to the jail's policies and procedures, the specific contents of his wallet, which allegedly included a list of medications that he had been prescribed at the time of his arrest, were not known to the individual defendant deputies in this case.

h) Argument or reference by Plaintiff's counsel or Plaintiff to the decedent by his first name of "Nick" or "Nicholas" rather than usage of his surname.

I) Evidence or argument by counsel regarding the fact that the decedent's wife was not permitted to see Mr. Christie in the hospital (as he was in the custody of the Lee County Sheriff's office) until after he was bonded out/released from custody.

j) Evidence or argument by counsel referring to the death of Mr. Christie as a "homicide."

k) Evidence or argument by counsel regarding improper opinion of laypersons as to what medical conditions Nicholas Christie may have had prior to or at the time of his death.

**<u>Local Rule 3.01(g) Certification</u>**: Pursuant to Rule 3.01(g) of the Local Rules of the United States District Court, Middle District of Florida, undersigned counsel has consulted with Plaintiff's counsel DiCello who has advised that they oppose the requested relief.

WHEREFORE, the Defendants Sheriff, Falzone, Calhoun, Pyle, Bramblet, Croker and DaRoss request that this Court enter an Order prohibiting the parties from arguing to the jury, introducing evidence, eliciting testimony from witnesses or referring to documents which contain evidence regarding information as set forth in subsections (a) - (k) above.

Further, and in support of this Motion, these Defendants would refer this Honorable Court to the Memorandum of Law incorporated herein and by reference made a part hereof.

## MEMORANDUM OF LAW

Rule 401 of the Federal Rules of Evidence states: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Rule 402 of the Federal Rules of Evidence states: "Relevant evidence is admissible unless any of the following provides otherwise:

- the United States Constitution;
- a federal statute;
- these rules; or
- other rules prescribed by the Supreme Court.

Irrelevant evidence is not admissible."

Rule 403 of the Federal Rules of Evidence states as follows:

> The court may exclude relevant evidence if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

### Subsequent Demotions of Defendants DaRoss and DiMarco

The introduction of evidence that the Defendants DaRoss and DiMarco were demoted after the subject incidents and death of Nicholas Christie as a result of other unrelated incidents is highly prejudicial and irrelevant to the Plaintiff's claims against the Defendants DaRoss and DiMarco. Defendants DaRoss and DiMarco are being sued in their individual capacities and are entitled to a fair trial on these claims. Therefore, this Court should exclude all reference to the fact that they were subsequently demoted as a result of unrelated incidents.

### Information on O.C. Spray Can Label Regarding Legality of Use

One of the key issues in this case concerns the use of O.C./pepper spray on the decedent,

Nicholas Christie, by corrections officers at the Lee County jail. During one round of depositions in this case, Plaintiff's counsel read into the record the contents of labels which appeared on the O.C. spray cans which were provided to the Plaintiff as being similar in kind to the O.C. spray that was utilized on Mr. Christie in late March of 2009. On the labels, the manufacturer states that: "the use of this substance or device for any purpose other than self defense is a crime under the law" and that it is "for defensive purposes only." This, however, is not the law which is applicable in the instant case. See Sanchez v. McCray, 349 Fed. Appx. 479 (11th Cir. 2009) (use of pepper spray upon a mental health inmate with a heart condition not excessive; wide range of deference given to prison official acting to preserve discipline and security; prison guards need not wait until a disturbance reaches dangerous proportions before responding). See also Soto v. Dickey, 744 F.2d 1260 (7th Cir. 1984 )(use of chemical agent is not unconstitutional even if inmate is locked in a cell or is handcuffed); Fischer v. Ellegood, 238 Fed. Appx. 428 (11th Cir. 2007)(malicious and sadistic standard applied in excessive force pepper spray case where inmate refused to follow orders); Scroggins v. Davis, 346 Fed. Appx. 504 (11th Cir. 2009)(malicious and sadistic standard applied in excessive force pepper spray and four point restraint case); Gargan v. Gabriel, 50 Fed. Appx. 920 (10th Cir. 2002)(malicious and sadistic standard applied, emptied four cans of pepper spray and two exposures to secondhand spray while secured in segregation cell with heart condition, guard did not know pepper spray aggravated heart condition).

In Danley v. Allen, 540 F.3d 1298 (11th Cir. 2008) *overruled in part on other grounds,* Randall v. Scott, 610 F.3d 701 (11th Cir. 2010) the Court noted that an initial use of pepper spray following a failure to obey an order to return to a cell does not violate the constitution. Chapter 951 Florida Statutes (2009) which governs county and municipal jails makes no reference to the use of O.C./pepper spray or a restraint chair. However, F.S. 951.23 (2009) subpart 10 makes it a

misdemeanor crime for an inmate to violate a posted jail rule... ©) threat of bodily harm...(aa) refusing to obey a reasonable order...(ff) conduct which disrupts or interferes with security or orderly running of the institution...(pp) using abusive or obscene language. Furthermore, it is interesting to note that F.S. 944.105(4)(d) (2009) authorizes private corrections officers to use non-deadly force to enforce regulations and orders. Chapter 944 defines "prisoner" to include jail inmates. F.S. 944.35 (1)(a)(3) and (4) (2009) authorizes the use of force to prevent damage to property and to quell a disturbance. It is also interesting to note that F.S. 394.9223 (2009) authorizes the use of O.C. pepper spray upon mental health inmates, while F.S. 916.1091 (2009) authorizes the use of a chemical agent, CN, upon mentally ill defendants. To permit any evidence regarding the language as contained on the O.C. spray cans label would be highly prejudicial and likely will confuse and mislead the jury to believe that use of the subject O.C. spray on Mr. Christie was criminal and therefore per se unreasonable and inappropriate.

**Use or Non-Use of O.C. Spray, Restraint Chairs or Spithoods in Other Corrections Facilities**

During one or more of the depositions in this case, various witnesses, most particularly expert witnesses, have testified regarding their experiences in other correctional settings, such as in state prison facilities or juvenile detention facilities, and whether or not those other correctional facilities utilized or did not utilize O.C. spray/pepper spray, restraint chairs or spit hoods such as was used with Mr. Christie in the Lee County jail. The legality of the use of these items on Mr. Christie is not an issue before this jury. The Lee County jail legitimately had these items for use by its corrections staff in March of 2009. Rather, the question for the jury in this case is what the purpose was for the use of the O.C. spray, restraint chair or spit hood on Mr. Christie and whether these items were used by one or more of the named defendants maliciously and sadistically for the very purpose of causing him harm or whether these items were used to

restore or maintain the safety and security of the Lee County jail. As a result, whether or not other jails, state prison facilities or juvenile detention facilities use these items to control inmates or detainees housed in those other facilities is not relevant for the jury in the present case to consider the issues before it, would be prejudicial to these Defendants and will only serve to confuse the jury in this case.

**Opinion Testimony by Experts Which is Outside Their Area of Expertise**

Based upon their reports and/or deposition testimony, it is anticipated that one or more of Plaintiff's experts may attempt to give opinion testimony regarding issues outside their area of expertise. For example, Plaintiff's correctional health and nursing expert Madeline LaMarre may attempt to testify that the corrections officers used excessive force when dealing with Mr. Christie. This would be inappropriate as she was not present during the subject incidents nor has she received any corrections training in regard to the use of force in a jail setting. The Court should properly disallow such testimony in this case. See Federal Rule of Evidence 702.

**Nicholas Christie's Post-Mortem Diagnoses**

During the depositions of the medical examiner who conducted Mr. Christie's autopsy (Dr. Pfalzgraf) as well as at least one of Plaintiff's expert (forensic psychiatrist Dr. Sally Johnson) testified that in their opinion Nicholas Christie suffered from bi-polar disorder at the time of or immediately prior to his death. Both testified that they came to this conclusion, a post-mortem diagnosis, after speaking with Joyce Christie, Nicholas Christie's widow. It is expected that the Plaintiff will attempt to introduce evidence of this post-mortem diagnosis of Nicholas Christie during the upcoming trial of this matter. However, such evidence is not properly admissible for two reasons.

First, such evidence is not reliable and is not properly admissible as an expert opinion in this case. There is no evidence in this case that Nicholas Christie was ever diagnosed by a

medical professional with bipolar disorder while he was alive. In fact during Mr. Christie's first incarceration he informed medical staff that he had no psychological conditions and did not have bi-polar disorder. Here there is only a post mortem diagnosis of a psychiatric condition by way of discussions with the decedent's wife and her layman's characterization of his symptomotology prior to his death. Dr. Pfalzgraf, who is not a psychiatrist, testified in deposition that he only came to such a conclusion after calling up a friend of his who was a psychiatrist to get an idea of what Mr. Christie's psychological condition was prior to his death as a way to figure out what may have contributed in some way to his death. Such testimony is impermissibly speculative and properly excluded pursuant to Federal Rule of Evidence 702(A) and ©) as well as Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

Second, such a post mortem diagnosis, which clearly could not have been known by the Defendants in this case at the time of their interactions with Mr. Chrisite is properly excluded as it is not probative of any issue that must be decided by this jury and would only serve to confuse the issues before them.

**Receipt of Capias Warrant After Death**

There has been testimony during the discovery of this case that after her husband's death, Joyce Christie received a capias warrant for her husband's arrest due to his failure to appear in court to answer for the charges he was arrested for in March of 2009. Capias warrants are issued by the courts not the Sheriff, although the Sheriff is required to execute them pursuant to Chapter 30, Florida Statutes. Plaintiff has listed "LCSO warrant notice of 4/23/09" as a trial exhibit and it is likely that Plaintiff will seek to introduce evidence regarding this document in an effort to inflame the jury against the defendants in this case. Such evidence is highly prejudicial and irrelevant to the Plaintiff's claims against the Defendants in this case. Therefore, this Court should exclude all reference to the receipt of a capias warrant or notice of a warrant for Nicholas

Christie's arrest after his death.

**Contents of Christie's Wallet**

Plaintiff has listed "Contents of Nick Christie's wallet at the time of his arrest" as a trial exhibit in this case. Evidence concerning the contents of the wallet of Nicholas Christie which although taken into his property at the jail for safekeeping pursuant to the jail's policies and procedures, the specific contents of his wallet, which allegedly included a list of medications that he had been prescribed at the time of his arrest, were not known to the individual defendant deputies in this case. None of the Defendant deputies took custody of Mr. Christie's property or his wallet. It would be unduly prejudicial to the defendants if Plaintiff were permitted to enter the specific contents of what was in Nicholas Christie's wallet at the time he was booked in as a way to some how denote collective knowledge of what should have been known by all of the jail corrections staff as the wallet was in the care, custody and control of the sheriff's office.

**Referring to the Decedent by his First Name Rather than by his Proper Surname**

It is expected that Plaintiff's counsel and/or Plaintiff Joyce Christie will refer to the decedent by his first name ("Nick" or "Nicholas") rather than using his surname. Such reference will serve no purpose other than to attempt to improperly personalize the decedent to the jury in an effort to garner sympathy for the Plaintiff in this case. Such is improper and should not be permitted by this Court.

**Reference to the Fact that the Decedent's Wife Could Not See Him Until He Was Bonded Out of Jail**

It is expected that Plaintiff's counsel will attempt to submit evidence or present argument to the jury regarding the fact that the decedent's wife was not permitted to see Mr. Christie in the hospital, as he was in the custody of the Lee County Sheriff's office, until after he was bonded out/released from custody. This was due to a policy of the Lee County Sheriff's office that in-

custody inmates who were taken to the hospital could not be seen by family members due to security concerns. There is no evidence that any of the named defendants had anything to do with whether or not Mrs. Christie was permitted to see her husband in the hospital. Such evidence has no relevance to the claims that are being presented to the jury in this case and can only possibly serve to prejudice the named defendants by inflaming the jury's sympathy for Mr. Christie's widow in this case.

**Use of the Word "Homicide"**

It is anticipated that Plaintiff's counsel will argue to the jury and attempt to admit evidence that Mr. Christie's death was a "homicide" with the implication being that the actions of the defendants were criminal in nature or, at the very least, improper. Although the medical examiner's finding as to the manner of Mr. Christie's death was homicide, his reference to this term was not meant to be a comment on the legality or propriety of the manner of his death but rather merely that his death was in some way a result of human action. To permit the jury to hear testimony or argument that Mr. Christie's death was a homicide will require some legal explanation of this terminology to avoid confusion and which will open the door to post-mortem investigations which were conducted by law enforcement agencies such as the State Attorney's Office, Florida Department of Law Enforcement and the Federal Bureau of Investigation and the fact that none of these agencies found any criminal behavior on the part of the defendants in this case. In fact it is believed that the Plaintiff will refer to Mr. Christie's death as a homicide and yet seek an order from this Court preventing the Defendants from explaining that they were never arrested or charged with criminal homicide.

**Improper LayPerson Testimony Regarding Nicholas Christie's Medical Conditions**

It is expected that Plaintiff's counsel will attempt to introduce evidence or will argue to the jury concerning improper opinions of layperson who had contact with Mr. Christie at or

around the time of his arrest(s) as to what medical conditions he may have had prior to or at the time of his death. For example, at least one employee of an Arby's restaurant gave a statement to LCSO investigators that she had opined that Mr. Christie was suffering from Alzheimer's like her grandfather. However, this witness is a layperson who has little or no medical training whatsoever and should not be permitted to give an opinion as to what medical condition(s), if any, Mr. Christie had at or prior to his death. Such evidence is not properly admissible in this case. See Federal Rule of Evidence 701.

The Motion should be granted.

**I HEREBY CERTIFY** that I electronically filed a copy of the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following this **29th** day of October, 2012 to: **TROY A. RAFFERTY, ESQUIRE** and **VIRGINIA M. BUCHANAN, ESQUIRE**, Levin Papantonio Thomas Mitchell Echsner Rafferty & Proctor, P.A., 316 S Baylen Street, Suite 600, Pensacola, FL 32502; **NICHOLAS DiCELLO, ESQUIRE,** and **WILLIAM HAWAL, ESQUIRE**, Spangenberg, Shibley & Liber, LLP, 1001 Lakeside Avenue East, Suite 1700, Cleveland, OH, 44114 and **GREGG A. TOOMEY, ESQUIRE**, Bunnell & Woulfe, P.A., 1625 Hendry Street, Suite 203, Fort Myers, FL, 33901.

***s/ Summer M. Barranco***
SUMMER M. BARRANCO - Trial Counsel
Florida Bar No. 984663
PURDY, JOLLY, GIUFFREDA, & BARRANCO, P.A.
2455 East Sunrise Boulevard, Suite 1216
Fort Lauderdale, Florida 33304
Telephone (954) 462-3200
Telecopier (954) 462-3861
Attorneys for Defendants Sheriff Scott, Falzone, Calhoun, Pyle, Bramblet, Croker and DaRoss