UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOYCE CHRISTIE, On Behalf of the Estate and Next of Kin of Nicholas T. Christie, Deceased

Plaintiff

vs.

MIKE SCOTT, Lee County Sheriff, PRISON HEALTH SERVICES, INC. nka PHS CORRECTIONAL HEALTHCARE, DEPUTY DANIEL FALZONE, DEPUTY KURTIS CALHOUN, DEPUTY DATHAN S. PYLE, DEPUTY JEREMY HARDIN, DEPUTY ANDRE DIMARCO, SERGEANT ARMANDO CROKER, SERGEANT MARY DAROSS, SERGEANT ROBERT BRAMBLET, LIEUTENANT MICHAEL PEAK, MARIA CANETE, R.N., LINDA SUNDO, L.P.N., NATALIA SAUNDERS, R.N., JOAN WINNIE, R.N., GERALDINE JONES, R.N., JANICE STEPNOSKI, L.C.S.W., KAREN OVERBEE, CHRISTINE ATEN, TAMMY HAMILTON, R.N., and KATHRYN T. HOLLIER, C.N.A.

Defendants

CASE NO. 2:10-cv-420-FtM-99DNF

JUDGE: PAUL A. MAGNUSON

MAGISTRATE JUDGE
DOUGLAS N. FRAZIER

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE AT TRIAL**

Now comes the Plaintiff, Joyce Christie, by and through undersigned counsel, pursuant to Federal Rules of Evidence 401, 402, 403, 701, 702, and 703, and hereby submits her Memorandum in Opposition to the Motion in Limine to Exclude Evidence at Trial ("Motion") filed by Defendants Sheriff Mike Scott, in his Official Capacity, Daniel Falzone, Kurtis Calhoun, Dathan Pyle, Armando Croker, Mary DaRoss, and Robert Bramblet

(hereinafter "Defendants"). [Doc.260] For the reasons stated more fully herein, the Defendants' Motion should be denied in its entirety.

## I. INTRODUCTION

In their Motion, Defendants seek to restrict Plaintiff from referring to Nick Christie by his name, from mentioning the official manner of Nick Christie's death as determined by the Lee County Medical Examiner, from commenting about Nick's mental state immediately preceding and during his incarceration at the Lee County Jail ("Jail"), from referring to the list of prescription medications that Nick had in his possession when he was arrested and which the Lee County Sheriff's Office ("LCSO") took custody of at the time of his incarceration, from presenting the testimony of eyewitnesses about Nick's behavior prior to and during his detention, from offering testimony regarding the standard of care relative to the use of force at other correctional institutions, and from describing the O.C. spray, including the label on the canister, that was used by Defendants to inflict injury upon Nick Christie. Defendants have identified no relevant legal authority that would support their extreme demands. Their Motion is little more than an effort to frustrate Plaintiff's ability to present the full circumstances of Nick Christie's confinement and injuries.

## II. LAW AND ARGUMENT

### A. *The Federal Rules of Evidence Do Not Support Defendants' Motion.*

In support of their Motion, Defendants rely almost exclusively on Rules 401, 402, and 403 of the Federal Rules of Evidence. Rule 401 sets forth the determinative test for relevancy in this matter: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in

determining the action." Fed. R. Evid. 401. To be relevant, the evidence need only have some tendency to make the proposition for which it is offered more or less likely; it need not prove that proposition. *Id.* "Whether a proposition is of consequence to the determination of the action is a question that is governed by the substantive law." *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981). Thus, any fact that has any tendency to prove a proposition that is of consequence in determining Plaintiff's claims is relevant. Rule 402 makes all relevant evidence admissible unless it is excluded by another rule or law. *See* Fed. R. 402.

Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 403 requires the Court to balance the probative value of the evidence against the risks of a decision on an improper basis. "In weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission." *U.S. v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980). Rule 403 does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case. The Rule only protects against evidence that is *unfairly* prejudicial. Evidence is unfairly prejudicial if it has an undue tendency to suggest decision on an improper basis.

### ***B. Defendants' Requests For Exclusion Are Meritless And Should Be Denied.***

#### 1. Maryann DaRoss and Andre Croker's Demotions Are Admissible.

The demotions of Maryann DaRoss and Andre Croker from the rank of sergeant to deputy are relevant to Plaintiff's claims. Plaintiff, Joyce Christie, claims that Sheriff Mike

Scott, in his Official Capacity, failed to train and supervise his employees to handle the recurring instances they confronted at the Jail. In failing to train his employees, Sheriff Scott was deliberately indifferent to the Jail's population, including Nick Christie, and this failure to train was the moving force behind the violations of Nick's federally protected rights. Moreover, in holding the rank of sergeant, DaRoss and Croker supervised and trained corrections officers at the Jail. Plaintiff claims that DaRoss and Croker failed to train and supervise their subordinates at the Jail. The ranks of DaRoss and Croker and their demotions are directly relevant as they tend to make it more likely that (1) Sheriff Mike Scott failed to implement proper training procedures as evidenced by DaRoss and Croker's lack of fitness to hold these positions, and (2) that DaRoss and Croker did not, and in fact were incapable of, properly training and supervising their subordinates.

Without elaboration, Defendants state that DaRoss and Croker are entitled to a fair trial. While this is true, the introduction of DaRoss and Croker's demotions will do nothing to deprive them of this right. DaRoss and Croker will be called as witnesses at trial and will have the opportunity to explain the circumstances of their demotion. Plaintiff also has a right to a fair trial and to present relevant evidence to support her claims. Given Plaintiff's need for the stated evidence and the absence of any identified prejudice that would be caused by its introduction, Defendants have failed to carry their burden of establishing that the risk of a verdict on an improper basis substantially outweighs the probative value of the evidence.

2. <u>The O.C. Spray Canister, Including Its Label, Is Admissible.</u>

Joyce Christie claims that the individual corrections officers used excessive force in spraying Nick Christie with oleoresin capsicum ("O.C.") no less than eleven times while he

was confined to a cell and during the approximate five-hour period that Nick was strapped to a restraint chair. The O.C. spray is expressed from a canister that contains a label stating, "the use of this substance or device for any purpose other than self defense is a crime under the law," and O.C. is "for defensive purposes only." (Def.'s Motion at 5.) To succeed on her excessive force claim, Plaintiff must show that the uses of force were excessive in that they were not made in a good faith effort to restore order. *See Whitley v. Albers*, 475 U.S. 312, 320-22 (1986); *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Success on this claim requires a showing of what force was used, how that force was intended to be used, what alternatives were available to using that force, and what instrument was used to deliver that force. Thus, the jury should be apprised of all necessary facts regarding the degree of force, the type of weapon that was used to deliver the force, the label on that injury inflicting device, including the manufacturer's recommendations, and what information the corrections officers had at their disposal concerning the O.C.

The O.C. canister's label also furthers Plaintiff's claims that Sheriff Scott failed to train the corrections officers on the uses of O.C. The individual corrections officers testified that they were never instructed to read this or other labels on O.C. spray canisters. This label, including its language, tends to make the proposition that Sheriff Scott failed to train his officers more likely than it would be in its absence. This evidence is relevant.

The Defendants cite to a number of cases standing for the proposition that the test for excessive force is whether the force was used in a good faith effort to restore order. The law regarding excessive force is straightforward; the jury will be instructed about the applicable

law; and Plaintiff has no intention of suggesting that the canister's label provides the applicable law in this case. There is no appreciable risk that the jury will be confused about what law to apply to the facts. Even if the introduction of this label poses a minimal risk of prejudice (which it does not), such a risk clearly does not substantially outweigh the probative value of the evidence. Certainly, whatever minimal risk of prejudice or confusion exists can be cured with a limiting instruction issued by the Court. *See* Fed. R. Evid. 105.

3. The Use Of Force In Other Correctional Facilities Is Admissible.

The modalities of force that are used in other institutions is directly relevant to whether the force used against Nick Christie in March 2009 was excessive given the circumstances then and there existing. This evidence is also highly probative of Plaintiff's claims that Sheriff Scott and Prison Health Services, Inc. ("PHS"), a Tennessee corporation contracted to provide medical and mental health services to the Jail population, had unconstitutional policies and practices that caused the violations of Nick Christie's rights.

All correctional facilities must abide by the same standard of care, which are the standards mandated by the United States Constitution. Accordingly, there is a basic standard of care that must be provided under similar circumstances. The fact that other correctional facilities disallow certain uses of force, permit certain uses of force only under limited circumstances, or place restrictions on certain uses of force is directly relevant to whether the force used against Nick Christie was needed to restore order. If, for example, other institutions require that a detainee undergo an extensive medical examination prior to being placed in a restraint chair or have protocols in place for segregating the medically and

mentally infirm population to ensure that they will not be subjected to force, those protocols are relevant to the determination of whether the policies at the Jail were deficient.

4. Plaintiff's Experts' Reports Are Admissible In Their Entirety.

Defendants attempt to limit information contained in the report of Plaintiff's correctional health/nursing expert, Madeleine LaMarre, claiming that statements concerning the use of force are outside the scope of her expertise. (Def.'s Motion at 7.) Ms. LaMarre's credentials as a correctional healthcare/nursing expert are impeccable, and Defendants make no effort to challenge those credentials. As a correctional healthcare expert, Ms. LaMarre is familiar with the standards governing nurses and healthcare professionals working in the correctional setting. There are numerous circumstances where the delivery of correctional healthcare and the uses of force intersect. As set forth in Ms. LaMarre's expert report, a correctional nurse has an obligation to advocate for her patient and to intercede in the uses of force when such force becomes excessive. (*See* Report of Madeleine LaMarre, attached as Exhibit A, at 11.) As such, a correctional nurse must be able to determine when force has become excessive. As articulated in Ms. LaMarre's report, the nurses employed at the Jail abdicated their responsibility to protect Nick Christie and to advocate for his health and safety by not taking all necessary measures to stop Defendants' gratuitous uses of force. (*Id.* at 11-12.) Thus, the uses of force are within the purview of Ms. LaMarre's expertise as it relates to the delivery of healthcare. Based on her review, Ms. LaMarre set forth her opinion:

> I conclude that both LCSO and Prison Health Services failed to follow policies and procedures related to the use of force, and that this resulted in correctional officers using excessive use of force that was cruel and inhumane and began a chain of events that led directly to his death. Prison Health Care staff failed to follow policies and procedures and ethical nursing practice to protect Mr. Christie from excessive force by corrections officers.

(*Id.* at 16-17.) Aside from a conclusory statement that the exercise of force is beyond the scope of her expertise, Defendants have offered nothing to challenge the bases for Ms. LaMarre's opinions or the statements made in her report as they relate to the uses of force against Nick Christie. The Court cannot accept Defendants' unsupported assertions.

5. Post-Mortem Psychiatric Diagnoses of Nick Christie Are Admissible.

The post-mortem reviews of Nick Christie by Drs. Sally Johnson, M.D., and Robert Pfalzgraf, M.D., are based on reliable scientific methods and are admissible. Federal Rules of Evidence 702 and 703 control the introduction of expert testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Federal Rule of Evidence 703 sets forth three permissible bases on which an expert's opinion may be grounded: (1) facts within his personal knowledge; (2) facts presented to him at trial; or (3) facts presented to him outside of court, but not perceived by him personally, if those facts are the type of facts reasonably relied upon by experts in the field in drawing such conclusions. *See* Fed. R. Evid. 703.

Defendants argue that the post-mortem diagnosis of bi-polar disorder should be excluded pursuant to 702(a) and 702(c). Defendants' argument that the diagnosis of Nick

Christie by Drs. Johnson and Pfalzgraf should be excluded pursuant to Fed. R. Evid. 702(a) is misguided. Both Drs. Johnson and Pfalzgraf are licensed medical doctors who will offer their opinions about complex medical issues. There is no question that this testimony is based on specialized knowledge that will assist the jury in determining issues in this case.[1]

Defendants' efforts to exclude the diagnosis of Drs. Johnson and Pfalzgraf under Rule 702(c) are equally unconvincing. Defendants trivialize the exhaustive investigation that Dr. Johnson conducted in forming her opinions by stating that her investigation consisted solely "by way of discussions with the decedent's wife and her layman's characterization of his symptomatology prior to his death." (Def.'s Motion at 8.) Contrary to Defendants' unfounded statement, in investigating this matter and drafting a nearly seventy page expert report, Dr. Johnson conducted a thorough, professional, and reliable review of the available materials, which include, among others, photographs, the investigation timeline, sworn statements, affidavits, and depositions of witnesses detailing their interactions with Nick Christie, Nick Christie's medical records from numerous hospitals, clinics, and physicians from years 2005 through 2009, including a prior inpatient psychiatric admission in 2005 and records from a subsequent outpatient psychiatric program that lasted through 2007, records of PHS, Lee County Emergency Medical Services, and Gulf Coast Medical Center, as well as pharmacy prescription records, which included psychotropic medications prescribed through March 2009. (*See* Report of Sally Johnson, M.D., attached as Exhibit B, at 2-3.) Moreover, Dr. Johnson gathered additional information by interviewing Joyce Christie, which is a reasonably reliable method for obtaining information for a psychiatric diagnosis that is

[1] Further buttressing this conclusion, in another section of the Motion, Defendants seek to exclude lay testimony because it addresses a medical diagnosis, which they argue can only be offered by a medical expert.

practiced by reputable psychiatrists. Dr. Johnson concluded that "Mr. Christie met the criteria for a diagnosis of Bi-polar Disorder Most Recent Episode Manic at the time of his detention." (*See* Exhibit B at 60.)

Dr. Johnson's review meets the standards of reliability set forth in Fed. R. Evid. 702 and *Daubert v. Merill Dow Pharm., Inc.*, 509 U.S. 579 (1993). Additionally, this review comports with the reliability requirements set forth under Fed. R. 703, which provides that experts may rely on evidence that might be found inadmissible if it is of the type of evidence that experts practicing in the same expertise would reasonably rely upon. Indeed, when giving opinions in the area of psychiatry, experts generally have been permitted to base their opinions on information not personally observed, including interviews with third-parties. *See, e.g., U.S. v. Bramlet*, 820 F.2d 851, 856, (7th Cir. 1987) (in prosecution for bank robbery, trial court did not err in permitting prosecution's psychiatrist from testifying as to sanity of defendant even though testimony was based in part, on the recorded observations of hospital-staff members whom the government did not call to testify; "observations recorded by trained, though admittedly not expert staff personnel, are exactly the type of information which the broadened scope of Rule 703 was intended to encompass"); *U.S. v. Hill*, 655 F.2d 512, 516 (3rd Cir. 1981) (in prosecution for distributing narcotics, trial court erred in refusing to permit defense psychologist from testifying as to defendant's psychological susceptibility to inducement or entrapment on grounds psychologist based testimony partly on hearsay); *U.S. v. Lawson*, 653 F.2d 299, 302 (7th Cir. 1981) (in criminal prosecution, trial court did not err in permitting prosecution psychiatrist to testify that defendant exhibited no signs of mental illness even though psychiatrist based his opinion in part on hearsay; "In this case, the

information Dr. Sheldon relied on to reach his opinion—staff reports, interviews with other physicians, and background information from the Marine Corps and the United States Attorney's Office—were clearly of the type that psychiatrists would rely upon in making a similar professional judgment.”). Consequently, Dr. Johnson’s exhaustive review of the materials in this case is reliable.

Defendants incorrectly state that the determination of Dr. Robert Pfalzgraf, M.D., Lee County Medical Examiner, that mania with psychotic features was a contributing feature of Nick Christie’s death is inadmissible because it is speculative. Defendants’ claim misrepresents the nature of Dr. Pfalzgraf’s investigation. Initially, as set forth *infra*, Dr. Pfalzgraf’s investigation of Nick’s death was conducted pursuant to the authority conferred by the State of Florida, and the unredacted autopsy report is fully admissible in this matter. With respect to his specific investigation, Dr. Pfalzgraf testified that following Nick’s death, he conducted independent medical research, spoke with Joyce Christie, and obtained documents from the LCSO. Based upon his review of this information, it was evident to Dr. Pfalzgraf that Nick suffered from a mental illness both prior to and while at the Jail. (*See* Robert Pfalzgraf Dep. 48:2-51:12.)[2] Nick’s history of mental illness was confirmed by his prior diagnosis of depression. (*Id.*) Further, the Jail records plainly demonstrated that Nick suffered from delusional paranoia immediately prior to and during his confinement.

Dr. Pfalzgraf’s review led to his conclusion that Nick suffered from bipolar disorder, and a manic episode was triggered when he discontinued his anti-depressive medication prior

[2] The deposition of Dr. Robert Pfalzgraf, M.D., is being filed concurrently with this Memorandum of Law.

to entering the Jail. (*Id.*)[3] Upon determining that more likely than not Nick Christie suffered from bipolar disorder characterized by mania with psychotic features, Dr. Pfalzgraf consulted by telephone with Dr. John Kennedy, a board certified forensic psychiatrist in Cincinnati, Ohio who performs psychiatric autopsies for the Lee County Medical Examiner's Office. (*Id.* at 52:23-53:1; 53:21-23; 55:10-13.) Dr. Kennedy confirmed Dr. Pfalzgraf's diagnosis. (*Id.*) During his deposition, Dr. Pfalzgraf testified as to the reliability of his investigation. Forensic pathologists never have the opportunity to interview the subject of the autopsy because he is deceased. The trusted method and manner of investigating the death is to collect evidence and information from whatever sources are available and determine what medical features are plausible and which are not. (*Id.* at 50:4-9.) This is precisely the manner in which Dr. Pfalzgraf investigated Nick Christie's death.

Defendants further suggest that Drs. Johnson and Pfalzgraf's conclusions concerning Nick Christie's mental status while he was at the Jail are inadmissible because Nick had not been conclusively diagnosed with bipolar disorder prior to his death. Defendants fail to appreciate that psychological autopsies – i.e., post-death determinations of psychiatric or psychological events - are routinely accepted under the standards of Rules 702 and 703, as well as *Daubert*. *See, e.g., Cloud v. Pfizer Inc.,* 198 F.Supp.2d 1118, 1135 (D.Ariz.2001) (noting that "these types of post-mortem autopsies appear to be generally accepted"); *In re Neurontin Mktg, Sales Practices, & Prods. Liability Litig.,* MDL No. 1629, Master File No.

[3] Dr. Pfalzgraf further noted that in his experience as a forensic pathologist, there are three typical circumstances that are involved in these types of interactions with law enforcement: (1) schizophrenia; (2) bipolar disorder; or (3) drug-induced psychosis. (Pfalzgraf Dep.50:19-51:12.) The negative toxicology screen ruled out the possibility of a drug-induced psychosis. (*Id.* at 50:24-51:1.) Additionally, he was able to "rule-in" bipolar disorder because of Nick's history of depression.

04–cv–10981–PBS, 2009 WL 3756328, at *9 (D.Mass. Aug.14, 2009)[4] (denying motion to exclude psychological autopsy where the plaintiff's expert reviewed a number of documents including medical records and police reports, because, although "[t]his approach will never produce the definite and testable results expected and demanded in many scientific inquiries; it is, however, the generally accepted methodology for analyzing the causes of a particular suicide and far from the 'junk science' that *Daubert* and Rule 702 are designed to exclude."); *Routhier v. Keenan*, No. 04–1359, 2008 WL 5146918, at *5 (Mass.Super.Nov.12, 2008) (admitting psychological autopsy where expert relied only on sworn testimony, record evidence, and relevant scientific literature); *Blanchard v. Eli Lilly & Co.*, 207 F.Supp.2d 308, 313 n.2 (D. Vt. 2002) (noting that a "psychological autopsy is a generally accepted methodology"). Therefore, it is of no consequence that Nick Christie was not diagnosed with bipolar disorder prior to his death, and the analyses and conclusions of Drs. Johnson and Pfalzgraf are admissible in this matter.

6. <u>Evidence That Joyce Christie Received A Warrant Is Admissible.</u>

The warrant that was sent to Nick Christie and received by Joyce Christie following Nick's death is relevant in this matter because it sets forth the relatively insignificant nature of the crimes for which Nick Christie was confined at the Jail.

7. <u>The Contents Of Nick Christie's Wallet Is Admissible.</u>

The contents of Nick Christie's wallet, including the medication list he carried with him, is relevant to Plaintiff's federal civil rights and state law claims. Plaintiff's claim for deliberate indifference to serious medical needs requires proof that (1) Nick Christie suffered

[4] All unreported cases are attached hereto.

from a serious medical need, and (2) the defendants were deliberately indifferent to that need. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir. 2004). Deliberate indifference may be shown when a prison "official knows and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Further, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (*citing Farmer*, 511 U.S. at 842).

The fact that Nick Christie kept a copy of the prescription medications in his wallet goes directly to the questions surrounding his medical needs, whether those medical needs were serious, whether the individual defendants knew of those medical needs, and whether any of the individual defendants were deliberately indifferent to those medical needs. Whether the individual defendants actually reviewed this list is a question of fact to be determined by the jury who will have the opportunity to make determinations of credibility based on all of the evidence presented. *Id.* Furthermore, the fact that the individual defendants had the list of medications in their custody and failed to review it is relevant to Plaintiff's claims for medical negligence brought pursuant to Florida state law, as well as her claims that PHS and Sheriff Scott failed to implement suitable policies, customs, and usages for initial intake medical screening, for reviewing prescription medication needs, and for delivering necessary medical care. Defendants have failed to come forward with any coherent explanation as to how introduction of a list of medications that Nick Christie had on

him when he was incarcerated is likely to suggest a verdict on an improper basis. Therefore, Defendants' request to exclude this evidence must be denied.

8. Plaintiff May Refer To Nick Christie By His First Name.

Defendants ask the Court to preclude Joyce Christie from referring to her late-husband by his first name, claiming that this will "improperly personalize the decedent." (Def.'s Motion at 9.) Defendants' attempt to dictate the name Joyce Christie is permitted to use when referring to her late-husband at the trial of this wrongful death action is baseless. Defendants have failed to present any plausible scenario in which referring to Nick Christie as "Nick" or "Nicholas" might result in an improper verdict. Throughout this litigation, Defendants have attempted to dehumanize Nick Christie, and their request to completely sanitize his presence from the trial of this matter cannot be granted.

9. Plaintiff May Present Evidence That She Was Prohibited From Seeing Her Husband In The Final Moments Of His Life.

Evidence regarding Joyce Christie's being prohibited from seeing her husband while he suffered multiple cardiac arrests at the hospital is relevant to both liability and damages in this matter. Joyce, who had travelled from Ohio and learned that Nick had been arrested, arrived at the Jail around 12:00 p.m. on March 29, 2009. She demanded to see her husband but was refused. She begged LCSO staff to send Nick to a hospital. She repeated her concerns made during numerous prior phone calls to the Jail that her husband was off of his medications, had a heart condition, was manic, on Coumadin, and needed a hospital. Joyce's requests and warnings were disregarded, and she was turned away. Within just a few hours Nick was noted to be in severe respiratory distress and was transferred to Gulf Coast Medical Center. After being admitted to the hospital, Nick suffered multiple cardiac arrests.

Sometime after his admission, Joyce arrived at the hospital. She was frantic. LCSO staff, however, refused to permit Joyce to see her husband because Nick was still in custody. Joyce begged, but was forced to leave the hospital to post bail (approximately $200) for Nick before being permitted to see him.

The fact that Joyce Christie was turned away from seeing her husband because he was in custody is circumstantial proof of her claims that she previously alerted the Jail staff of Nick's medical history and needs but was turned away because he was in custody. Additionally, that Joyce Christie was prohibited from seeing her husband in the final moments of his life is directly relevant to Plaintiff's wrongful death damages, which include mental anguish related to the loss of her husband. Accordingly, the fact that Joyce was prohibited from seeing her husband in the final moments of his life is relevant to this issue.

10. The Official Manner Of Nick Christie's Death Is Admissible.

Defendants ask the Court to preclude Plaintiff from using the term "homicide" to refer to Nick Christie's death. As homicide is the officially recognized manner of death as determined by the Lee County Medical Examiner, Defendants' request is meritless. (*See* Lee County Medical Examiner's Report, attached hereto as Exhibit C.) Dr. Pfalzgraf is commissioned by the State of Florida to investigate the manner and cause of Nick Christie's death and set forth his conclusions in an autopsy report. *See* Fla. Stat. § 406.11. Accordingly, the unredacted autopsy report is fully admissible as evidence in this litigation as both a public record and as a record kept in the ordinary course of business. *See, e.g.,* Fed. R. Evid. 803(6), 803(8); *Sosna v. Binnington,* 321 F.3d 742, 747 (8th Cir. 2003); *Wood v. Valley Forge Life Ins. Co.,* 478 F.3d 941, 945-46 (8th Cir. 2007); *Blake v. Pelligrino,* 329 F.3d 43,

48 (1st Cir. 2003); *U.S. v. Rosa*, 11 F.3d 315, 333 (2d Cir. 1993). Accordingly, the unredacted autopsy report, including the listed manner of death of "homicide" is admissible.

Defendants do not suggest that the manner of death was the result of an erroneous or untrustworthy investigation or that Dr. Pfalzgraf lacked qualifications to render this conclusion. Rather, Defendants' only stated concern regarding introduction of the official manner of Nick Christie's death of "homicide" is that they will be prejudiced by the introduction of this terminology. In excluding evidence under Rule 403, however, the test is not merely whether introduction of the evidence will be prejudicial to the complaining party. The test, rather, is whether the unfairly prejudicial aspect of the evidence substantially outweighs any probative value. *See* Fed. R. Evid. 403. In this instance, the probative value of the testimony is great. The chief issues to be decided by the jury in this matter are whether the conduct of Defendants was improper under the law, and whether those acts caused injury to Nick Christie. As Defendants rightly admit, a determination of homicide is a finding that death was caused by the actions of another human. Consequently, the Lee County Medical Examiner's conclusions bear directly upon a principle issue in this case.

Defendants further argue that introduction of the term "homicide" will imply that one or more of the defendants committed a criminal act. As Defendants correctly note, "[a]lthough the medical examiner's finding as to the manner of Mr. Christie's death was homicide, his reference to this term was not meant to be a comment on the legality or propriety of the manner of his death but rather merely that his death was in some way a result of human action." (See Def.'s Motion at 10.) Defendants make no effort to argue that a proper limiting instruction issued under Rule 105 of the Federal Rules of Evidence could not

eliminate any claimed prejudice. The law is clear, however, that before excluding evidence under Rule 403 the Court should consider whether a Rule 105 cautionary instruction would eliminate the claimed prejudice. In this case it would. An instruction that a finding of homicide is a conclusion that death was caused by the acts of one or more persons would cure any claimed prejudice.

11. Evidence Concerning Lay Opinion Based On Personal Knowledge Of Nick Christie Prior To And During His Detention Is Admissible.

Rule 701 of the Federal Rules of Evidence provides that a lay witness may provide opinion testimony in limited circumstances:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> **(a)** rationally based on the witness's perception;
>
> **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> **(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701 Accordingly, "[i]f a witness is not testifying as an expert, his testimony in the form of opinions or inferences need only be rationally based on his perception and helpful to the determination of a fact in issue." *Greenwood Ranches, Inc. v. Skie Const. Co., Inc.*, 629 F.2d 518, 522 (8th Cir. 1980); *U.S. v. Griley*, 814 F.2d 967, 975 (4th Cir. 1987) ("The jury was entitled to credit the opinions of lay witnesses such as Stevenson, where these opinions were rationally based on the witnesses' perceptions and helpful in making factual determinations."); *Soden v. Freightliner Corp.*, 714 F.2d 498, 512 (5th Cir.1983); *See U.S. v. Meling*, 47 F.3d 1546, 1556-57 (9th Cir 1995) (district court properly admitted lay opinion

testimony of 911 operator and paramedic that defendant alleged to have poisoned wife in scheme to recover under life insurance policy was "feigning grief" because it was based on personal knowledge formed while paramedic had opportunity to form impression of defendant while attending to his wife and jury was not in the same position as witnesses to evaluate the defendant). The decision to admit lay opinion testimony is entrusted to the sound discretion of the trial court. *See Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.*, 320 F.3d 1213, 1216 (11th Cir. 2003).

Defendants do not identify the individual whose testimony they seek to exclude, but Plaintiff surmises that it is the statement of Courtney Bain, an employee of the Arby's restaurant where Nick Christie was observed engaging in bizarre behavior that directly led to his arrest for trespassing and his detention at the Jail. Ms. Bain was interviewed by the LCSO. During the interview, the LCSO investigator asked Ms. Bain, "What was your impression of his – his state and how he was?" Ms. Bain responded by saying:

> Well, I could tell that something wasn't right with him. I could tell that something – mentally something was wrong with him. I figured maybe he's Alzheimer's or dementia patient – suffering from. Something was wrong with his head 'cause he – he just wasn't acting right because he would get – he would get a little angry because nobody was calling the limo place for him here. Well, we're not supposed to. That's not my job.

(*See* Sworn Statement of Courtney Bain, attached as Exhibit D, at 2-3.) Contrary to Defendants' argument, Ms. Bain did not diagnose Nick Christie with Alzheimer's disease. Rather, her testimony was based on her personal interactions with him, and she believed that his behavior was abnormal, reminding her of someone with a mental condition such as Alzheimer's or dementia. She further stated that based on her observations it was obvious

and apparent that Nick had some sort of mental issue and that it did not appear that these issues were the result of intoxication. (*See* Exhibit D at 3.)

Ms. Bain's statement is consistent with the type of lay opinions that have been deemed admissible. In *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006), a lay witness offered her testimony that the plaintiff appeared "depressed" in an action alleging intentional infliction of emotional distress. The Seventh Circuit held that this lay opinion evidence was properly admitted because it was based on personal knowledge and was likely to be helpful to the jury on a fact needed to be proved. The court explained that, "[w]hile 'depressed' does have a medical definition, a reasonable jury can be expected to understand the difference between lay use of an adjective and an expert's use of the same word to describe a specific psychological condition." *Id.*

Ms. Bain's statements are based on her reasonable perceptions and are likely to assist the trier of fact in determining issues needed to be proved in this case. The witness did not provide a medical diagnosis, as Defendants' insist, but rather more generalized comments about the obvious and apparent abnormalities of Nick Christie's behavior as observed by her and her co-workers just moments before his arrest. The import of this evidence is that Nick's bizarre behavior was evident to an untrained person. This is relevant because Defendants and PHS have consistently argued that they could not have known that Nick suffered from mental abnormalities upon his presentation at the Jail. Because Nick Christie is deceased, the jury will never have the opportunity to view him.

## III. <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants' Motion should be DENIED.

Respectfully submitted,

s/ Nicholas A. DiCello
WILLIAM HAWAL (OH Bar No. 0006730) (PHV)
NICHOLAS A. DICELLO (OH Bar No. 0075745) (PHV)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (FAX)
*whawal@spanglaw.com*
*ndicello@spanglaw.com*

***Trial Counsel for Plaintiff***

TROY A. RAFFERTY (FL Bar No. 024120)
VIRGINIA M. BUCHANAN (FL Bar No. 793116)
**LEVIN PAPANTONIO THOMAS MITCHELL ECHSNER RAFFERTY & PROCTOR P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
(850) 435-7000
(850) 497-7059 (FAX)
*trafferty@levinlaw.com*
*vbuchanan@levinlaw.com*

***Local Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of November, 2012, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

s/ Nicholas A. DiCello

WILLIAM HAWAL (OH Bar No. 0006730) (PHV)
NICHOLAS A. DICELLO (OH Bar No. 0075745) (PHV)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (FAX)
*whawal@spanglaw.com*
*ndicello@spanglaw.com*

***Trial Counsel for Plaintiff***